United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1593
_____

United States of America          *
                                   *
        Appellee,                  *
                                   * Appeal from the United States
   v.                              * District Court for the
                                   * District of Nebraska.
                                   *
Henry "Hank" Belitz               *
                                   *
        Appellant.                 *

_____

Submitted:  January 15, 1998

Filed:  April 1, 1998
_____

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit
        Judge and SACHS,[1] District Judge.

_____

SACHS, District Judge.

Appellant Henry Belitz was indicted for conspiracy to distribute methamphetamine, use of a firearm during and in relation to a drug trafficking crime, possession with intent to distribute methamphetamine, and possession of a firearm by a convicted felon.  Belitz pled guilty to the conspiracy charge and was sentenced by the district court[2] to 60 months imprisonment.  On appeal, Belitz

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

contends that the district court erred in (1) enhancing his sentence for possession of a firearm pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines and (2) refusing to reduce Belitz's base offense level for his mitigating role in the offense pursuant to § 3B1.2 of the Sentencing Guidelines.  We affirm.

## I.

In 1994, law enforcement personnel began investigating a methamphetamine distribution conspiracy involving, among other individuals, Michael Crestoni.  Mr. Crestoni cooperated with law enforcement and admitted selling methamphetamine to various street dealers.  The investigation led to the execution of a search warrant on appellant Belitz's residence.

In the course of executing the search warrant, police discovered approximately six and one-half pounds of methamphetamine in Belitz's basement.  Two locked bags containing approximately six pounds of methamphetamine were found in a small refrigerator; the remainder of the narcotics, 380 grams of methamphetamine, were found in a locked tool box. Belitz did not have a key to the locked bags and, although he owned the key to the tool box, had given that key to Crestoni and did not have it in his possession at the time of the search.  Money, scales and weapons were also found in the basement.  Upstairs, in Belitz's living room, police found a loaded semi-automatic pistol on the television set.

Belitz pled guilty to conspiracy with intent to distribute methamphetamine.  At the direction of the district court, the probation office prepared a presentence report.  Belitz objected to the amount of methamphetamine used to calculate his base offense level, in addition to the firearm enhancement and the role in the offense appraisal.

At an evidentiary hearing, the district court sustained appellant's first objection, finding that Belitz had accountability

for only between 100 and 400 grams of methamphetamine, the drugs found in the tool box.  The court rejected his other objections, which are the subject of this appeal.

## II.

### A.  Section 2D1.1(b)(1) Enhancement

Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two level increase in a defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed."  The Government has the burden at sentencing to show by a preponderance of the evidence that a weapon was present and that it is not clearly improbable that the weapon was connected with the criminal activity.  United States v. Vaughn, 111 F.3d 610, 616 (8th Cir. 1997), applying U.S.S.G. § 2D1.1, Application Note 3.  The district court's finding that a weapon was sufficiently connected to the offense is reviewed for clear error.  United States v. Fairchild, 122 F.3d 605, 614 (8th Cir. 1997), cert. denied, sub nom. Leisinger v. United States, ___ U.S. ___, 118 S.Ct. 1086 (1998).

Belitz contends that it was clearly improbable that the gun found in his living room had any connection with the drugs stored in his basement. In support of this contention Belitz first asserts that he had a legitimate and innocent reason for possessing the gun.  At sentencing, Belitz offered testimony that the gun belonged to a friend of his and that Belitz, a gunsmith, had been given the gun for the purpose of making repairs.  At the time the search warrant was executed, Belitz had completed the repairs and had told his friend that he could pick up his gun.  He asserted that he left the gun on top of the television so that his friend could easily retrieve it, and that he loaded the gun because the weapon was loaded when he received it.  Belitz stated he had directed the two people with whom he shared his residence to return the gun to his friend when he arrived.

Belitz also contends that he should not receive an enhancement because he had no reason to use a weapon to protect the drugs and, when the opportunity arose to use a weapon against the police, he was nonviolent and cooperative. Belitz testified that he had been storing valuables, including the methamphetamine, for Crestoni, a long-time friend. He reported that he and Crestoni often exchanged favors and, on a number of occasions, Belitz had allowed Crestoni to store valuables in his home. Approximately one month before the execution of the search warrant, Crestoni was in the process of moving and, afraid that one of his associates would rob him, asked to store some valuables in Belitz's residence. Belitz gave Crestoni access to his basement, including use of a locked tool box and the key to that tool box. At that time, Belitz said he did not know what Crestoni was storing. Approximately two weeks later, Belitz testified, he observed Crestoni place money in the tool box and remove a bag of powder from the tool box; at that time he supposedly told Crestoni to remove the drugs from his house. Crestoni had not removed the drugs when the search warrant was executed. Belitz testified he had no motive to protect the methamphetamine because he did not share in the profits from Crestoni's drug distribution. Furthermore, he testified that on the morning the search warrant was executed, he made no attempt to elude police or to use a weapon against the police, despite the fact that he had a handgun in the truck in which he arrived at his house. Belitz reported that he cooperated with police, even leading them to the handgun in the vehicle.[3]

Belitz's contentions do not require reversal. Another's ownership of the gun is not controlling if a defendant had constructive possession, including dominion or control, over the weapon. Fairchild, 122 F.3d at 614; United States v. Payne, 81

---

[3]At sentencing, the district court ruled that the Government had established no nexus between the gun in the truck and the criminal activity. Accordingly, that handgun is not relevant for purposes of this appeal.

F.3d 759, 762 (8th Cir. 1996). Belitz clearly had dominion over the firearm at the time it was found. Nor is the fact that Belitz allegedly possessed the gun for a legitimate purpose controlling. See United States v. Early, 77 F.3d 242, 244 (8th Cir. 1996) (upholding enhancement where defendant claimed he was trying to sell firearm in a transaction separate from drug sale); United States v. Kinshaw, 71 F.3d 268, 271 (8th Cir. 1995) (upholding enhancement where defendant possessed a gun he was allegedly "merely adjusting" for the owner). Although Belitz may have had an innocent reason for obtaining the gun, the weapon was found in an open area leading to the drugs, was loaded and was easily accessible. A temporal and spatial relation thus existed between Belitz, the weapon, and the drugs. See Payne, 81 F.3d at 763. Although he had no financial stake in Crestoni's operation, Crestoni was a friend and Belitz was aware that he was storing methamphetamine and cash in his basement. At the very least, the district court was entitled to conclude that the readily accessible gun enhanced appellant's comfort level while the drugs were in his home. Although Belitz testified that he had no reason to protect Crestoni's property, such self-serving testimony need not be accepted when the surrounding circumstances create doubt and a high incentive to fabricate exists. The district court based its ruling in part on "witness credibility." It was not clear error for the district court to find that the Government's circumstantial showing established the required nexus between the handgun and the drug activity. The persuasive nature of that showing was not necessarily overcome by the attempted rebuttal.

## B.  Section 3B1.2 Reduction

Section 3B1.2 of the Sentencing Guidelines provides for a reduction in a defendant's base offense level if the defendant is found to be a minimal or minor participant in the criminal offense. The Commentary to § 3B1.2 explains that the 4 level minimal role reduction is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group."

§ 3B1.2, Application Note 1.  A defendant's lack of knowledge or understanding of the scope and structure of the enterprise is indicative of a role as minimal participant.  Id.  A 2 level reduction is authorized where a defendant's role is minor but not minimal.  § 3B1.2(b).  The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense.  United States v. Goebel, 898 F.2d 675, 677 (8th Cir. 1990). Whether a defendant's role in the criminal activity was minimal or minor is a factual determination and, accordingly, we will affirm the district court's conclusion that Belitz was not a minimal or minor participant unless it is clearly erroneous.  Id.

Belitz argues that he is entitled to a reduction because he was unaware of the scope of the criminal enterprise and even unaware of most of the drugs stored in his house.  The district court agreed with Belitz that he could not have foreseen the full amount of drugs in his home or the scope of the enterprise in which Crestoni was involved.  Accordingly, the court held him accountable only for the amount of narcotics Belitz knew was being stored in his home or, at least, the amount Belitz assumed the risk that his friend would store.  He was admittedly aware of drugs in the tool box, and the quantity was not so extraordinary as to be treated as unforeseeable.  The purpose for reducing a defendant's base offense level where the defendant had little or no understanding of the scope of the enterprise had thus already been accomplished.

> If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense.

U.S.S.G. § 3B1.2, Application Note 4.  Although he was not convicted of a less serious offense, Belitz's base offense level was based not on the full six and one-half pounds of methamphetamine found in his home, but upon only 380 grams.  In relation to this small amount for which he was held accountable, Belitz was not a minimal or minor actor.

Appellant also argues that his base offense level should be reduced because he played no vital role in the conspiracy but merely served as a storage facility for Crestoni; he arranged no sales and received no profits.  The district court, however, found that his voluntary and knowing storage of a substantial amount of methamphetamine was sufficient to preclude a decrease for a minor role.  We cannot conclude that this determination was erroneous.  Crestoni needed a place to store his drugs and Belitz provided him a safe haven.  Belitz also provided a place for Crestoni to store proceeds from his drug distribution.  Belitz thus played a significant role in the conspiracy.  The fact that Belitz did not profit from the arrangement and stored the narcotics only as a favor is not dispositive.  See United States v. Ellis, 890 F.2d 1040, 1041 (8th Cir. 1989).  Accordingly, we agree with the district court's conclusion that a decrease in the offense level is not warranted.

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.