Gary Edwin **NORD**, Petitioner,

v.

**Randy J. DAVIS, Warden, Federal Prison Camp; Federal Bureau of Prisons, Respondents.**

No. Civ. 99–4225.

United States District Court,
D. South Dakota,
Southern Division.

Feb. 29, 2000.

Gary Edwin Nord, Yankton, SD, petitioner pro se.

Randy J. Davis, Yankton, SD, respondent pro se.

Ted L. McBride, United States Attorney, Sioux Falls, SD, for respondent.

BOP, Kansas City, KS, respondent pro se.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Petitioner, Gary Edwin Nord, an inmate at the Federal Prison Camp in Yankton, South Dakota, has applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming that he is entitled to a one-year reduction in his sentence under 18 U.S.C. § 3621(e)(2)(B). Petitioner has exhausted his administrative remedies and has paid the appropriate filing fee. For the reasons stated below, petitioner's application for a writ of habeas corpus is denied.

On June 6, 1991, petitioner was convicted of possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1), and using or carrying a firearm in relation to a drug trafficking offense, 18 U.S.C. § 924(c), and was sentenced to imprisonment for a term of 180 months. The Presentence Investigation Report (PSR) from petitioner's initial sentencing for these offenses indicates that petitioner had in his home "a large quantity of controlled substances"; $155,493 in cash; drug para-

phernalia, including "an electronic scale, other scales, cutting agents and packaging material" and numerous firearms, including a .44 Magnum Smith & Wesson revolver (containing six live rounds), a .32 caliber Colt semi-automatic pistol (containing four live rounds), a .22 caliber North American Arms revolver (containing five rounds of .22 caliber birdshot), a .22 caliber Ruger revolver, a Colt King Cobra .357 Magnum revolver (containing six live rounds), a Browning semi-automatic 12–gauge shotgun, and a Browning semi-automatic 12–gauge shotgun. On April 25, 1997, following the Supreme Court's clarification on the meaning of the "use and carry" provisions of § 924(c), *see Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), petitioner's judgment of conviction was vacated pursuant to a motion and settlement filed jointly by petitioner and the government. (Pet.Ex.B.) Under the settlement, the government waived its right to argue that petitioner's conviction for violating § 924(c) was not susceptible to collateral attack in exchange for petitioner's agreement not to challenge the sentencing court's authority to apply a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1) upon re-sentencing. (Id.Ex. C.)

Through the re-sentencing, petitioner's original sentence of imprisonment was reduced from 180 to 135 months. Petitioner's original Judgment stated that the Guideline Range for petitioner's drug offense was based on an Offense Level of "XXX" and a Criminal History Category of II, yielding an imprisonment range of 120–135 months.[1] (Petitioner was originally sentenced to 120 months in prison for the drug offense and 60 consecutive months for the "use or carry" conviction which was subsequently vacated.) The Amended Judgment produced upon re-sentencing did not change the Offense Level and Criminal History category for the drug offense, but listed the applicable Guideline Range as 135–168 months of imprison-

ment, and re-sentenced petitioner to 135 months in prison, a sentence consistent with an Offense Level of 32 and a Criminal History Category of II. The sentencing court stated that it was using "the low end of the Guideline Range."

Petitioner claims that respondents have abused their discretion in denying him early release, arguing that his custody classification within the Bureau establishes he does not pose any threat to public safety. Petitioner also appears to claim that respondents cannot deny him early release on the basis of his vacated § 924(c)(1) conviction. Respondents do not really address petitioner's first argument. Instead, respondents maintain that they are entitled to presume that petitioner poses a threat to public safety and to deny him early release, based on the theory that his § 924(c) conviction would have formed the basis for a two-level enhancement for possession of a firearm if petitioner was convicted only of the drug offense.

■ Although he argues to the contrary, petitioner is not entitled to default judgment based on the government's failure to respond to his abuse of discretion argument. "The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.1990) (citing numerous cases from other circuits). Petitioner's claims must therefore be evaluated on their merits.

Under the regulations which govern the Bureau of Prisons, respondents may categorically deny early release under § 3621(e)(2)(B) to "inmates whose current offense is a felony ... [t]hat involved the carrying, possession or use of a firearm or other dangerous weapon or explosives." 28 C.F.R. § 550.58(a)(1)(vi)(B). The Eighth Circuit has upheld the Bureau's categorical application of this regulation to inmates who have received a two-level enhancement for the possession of a firearm

---

1. According to the Sentencing Table, the applicable Guideline Range for an Offense Level of 30 and a Criminal History Category of II is 108–135 months. Petitioner's drug conviction, however, carried a ten-year (120–month) statutory minimum sentence.

during the commission of their offenses or who have been convicted for felon in possession of a firearm, on the theory that such determinations are based on underlying conduct which indicates that the inmates pose a serious risk to public safety. *See Bellis v. Davis,* 186 F.3d 1092 (8th Cir.1999). In addition to these two categories, the Bureau's applicable Program Statement gives the Bureau discretion to deny early release to certain inmates who were convicted of violating 18 U.S.C. § 924(c)(1), including inmates whose convictions were vacated under *Bailey v. United States:*

> In some cases, an inmate may be convicted of an offense listed in this section as well as 18 U.S.C. § 924(c)(1), use of a firearm during a crime of violence or a drug trafficking crime. According to the U.S. Sentencing Guidelines, if a defendant receives a § 924(c)(1) conviction, the court may not assess a two level "Specific Offense Characteristic" enhancement for possession of a firearm; however, in light of the Supreme Court ruling in *Bailey v. U.S.,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), a number of § 924(c)(1) convictions have been vacated. In *Bailey,* the Court held that the term "use" connotes an active employment of a firearm. If any of the offenses listed in this section were accompanied by a § 924(c)(1) conviction that was subsequently vacated due to the *Bailey* decision, staff shall presume that the inmate would have received a two-level "Specific Offense Characteristic" enhancement for possession of a firearm unless there is a specific court order to the contrary. Thus, absent a

court order specifically denying the application of a two point enhancement for possession of a firearm, the inmate will not receive certain program benefits.

P.S. 5162.04 § 7(b). Petitioner falls into this category of inmates which the Program Statement purports to make ineligible for early release.

█ Based on the factual record before the Court, respondents are entitled to exercise their discretion to deny early release to this petitioner. Respondents argue that Program Statement 5162.04 gives them authority categorically to deny early release to any inmate whose § 924(c)(1) conviction was vacated pursuant to *Bailey v. United States,* on the theory that all such prisoners would have received a two-level enhancement for possession of a firearm under U.S.S.G § 2D1.1(b)(1). It is not necessary to decide this case on such a broad ground.[2] Based on the PSR's description of drugs, drug paraphernalia, and firearms in petitioner's residence, a two-level enhancement for possession of a firearm certainly would have been warranted if petitioner had been convicted of the drug charge alone. *See United States v. Belitz,* 141 F.3d 815, 817 (8th Cir.1998) (affirming a district court's application of the enhancement, where a single firearm was kept in defendant's upstairs living room and drugs were kept in defendant's basement, even though defendant testified that he did not own the firearm). Moreover, by all appearances, the sentencing judge applied such an enhancement upon re-sentencing, even though the Amended Judgment (apparently mistakenly) lists the Total Offense Level as 30 instead of 32.[3]

---

**2.** It is difficult to imagine a defendant who could have been convicted of violating § 924(c)(1) prior to *Bailey* who would not also qualify for an enhancement under § 2D1.1(b)(1). It would, however, be imprudent to hold that such an enhancement is appropriate for every defendant who violated § 924(c)(1) prior to *Bailey* when it is not necessary to do so. *See Bailey,* 516 U.S. 137, 151, 116 S.Ct. 501, 509, 133 L.Ed.2d 472 (1995) (noting that defendants who do not fit the "use" or "carry" provisions of § 924(c)(1)

will "often" meet the requirements for an enhancement under § 2D1.1(b)(1)).

**3.** Although the Amended Judgment says that it is based on an Offense Level of 30 and a Criminal History Category of II, those figures are inconsistent with its statement that the applicable Guideline Range is 135–168 months and its actual sentence of 135 months in prison, which the court stated was at the "low end" of the Guideline Range. An Offense Level of 32, on the other hand, along with a Criminal History category of II, is

Accordingly, the facts associated with petitioner's conviction entitle respondents to conclude that petitioner is as much of a threat to public safety as the inmates who were denied early release in *Bellis.*

 The rationale in *Bellis* is applicable to petitioner, notwithstanding petitioner's custody classification within the Bureau. Petitioner argues that *Bellis* only upheld respondents' discretion to deny early release to prisoners who "pose a serious risk to public safety," and that respondents cannot credibly claim that he poses such a risk because the Bureau has placed him in "community custody" [4] and found that he presents no "public safety factors." [5] As was the case with the inmates denied early release in *Bellis,* respondents are entitled to conclude from the conduct surrounding this particular petitioner's offense that petitioner poses a serious threat to public safety. Moreover, respondents did not abuse their discretion in placing petitioner in community custody with no public safety factors but denying him early release under P.S. 5162.04. The difference in the Bureau's classifications of petitioner for custody purposes and for purposes of early release appears to rest on the Bureau's judgment that the risk which a person poses to public safety while in custody, even "community custody" (which requires at least "minimal supervision"), is different from, and less than, the risk that the same person poses when not in custody at all. That judgment is not unreasonable.

Petitioner also argues that the Eighth Circuit's decision in *Bellis* is itself unreliable, in light of recent decisions in other circuits which hold that the current versions of 28 C.F.R. § 550.58 and P.S. 5162.04 are invalid. *See Ward v. Booker,* 202 F.3d 1249 (10th Cir.2000); *Kilpatrick v. Houston,* 197 F.3d 1134 (11th Cir.1999) (per curiam), *aff'g* 36 F.Supp.2d 1328 (N.D.Fla.1999). These decisions, however, are not from the Eighth Circuit and do not bind the Court. *Bellis* does. Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

consistent with a Guideline Range of 135–168 months and the 135–month sentence. Petitioner's stipulation to a two-level enhancement for possession of a firearm explains the reason for the apparent increase in Offense Level from 30 to 32 between the original Judgment and the Amended Judgment. The listing of an Offense Level of 30 in the Amended Judgment is best explained as a clerical error.

4. The "community custody" classification applies to "[a]n inmate who is eligible for the least secure housing, including any which is outside the institution's perimeter," and allows such an inmate to "work on outside details with minimal supervision" and to "participate in community based program activities if other eligibility requirements are satisfied." P.S. 5100.06, ch. 2, p. 1 (June 7, 1996).

5. With respect to inmates in the custody of the Bureau of Prisons, "public safety factors" are those "which require increased security measures to ensure the protection of society." P.S. 5100.06, ch. 2, p. 2 (June 7, 1996).