# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-3791

_____

United States of America,      *
                               *
        Plaintiff - Appellee,  *
                               *
v.                             *
                               *
Petronilo Payan Salvador,      *
                               *
        Defendant - Appellant. *


_____

No. 05-1257

_____

United States of America,      *
                               *
        Plaintiff - Appellee,  *
                               *
v.                             *
                               *
Alonso Urquidez-Tellez,        *
                               *
        Defendant - Appellant. *

Appeals from the United States
District Court for the District
of Minnesota.

_____

Submitted: September 13, 2005
Filed: October 20, 2005

_____


Before MELLOY, LAY and BENTON, Circuit Judges.

MELLOY, Circuit Judge.

Alonso Urquidez-Tellez was convicted after a jury trial of conspiracy to distribute methamphetamine, possession with intent to distribute thirteen ounces of methamphetamine, and possession of a firearm in relation to a drug trafficking offense. As a result of the same investigation that lead to Urquidez-Tellez's conviction, Petronilo Payan Salvador pled guilty to conspiracy to distribute methamphetamine and possession of a firearm in relation to a drug trafficking offense. Urquidez-Tellez's only argument on appeal is that there was insufficient evidence to support his conviction. Salvador argues the district court[1] improperly denied him a sentence reduction. We affirm.

I. Background

In the summer of 2003, the Hennepin County Sheriff's Office was investigating a group of methamphetamine traffickers based in south Minneapolis. This investigation resulted in five indictments, including those of the two appellants. During the course of the investigation, an undercover officer made three methamphetamine purchases from the group. The first two purchases were for two ounces each. For the third purchase, the undercover officer arranged to buy thirteen ounces of methamphetamine.

To facilitate each sale, members of the conspiracy drove to a parking lot where they met the undercover officer. Because of the size of the third purchase, the members of the conspiracy sent three vehicles to the location of the transaction. The

_____

[1] The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

occupants of the first vehicle, including Salvador, negotiated the drug deal with the officer. The first vehicle had a semi-automatic pistol in the glove compartment. Urquidez-Tellez was a passenger in the second vehicle, which contained a loaded .357 magnum between the center console and the passenger seat. The trunk of the second vehicle contained the drugs which were hidden in a cereal box. Another co-conspirator and a person who was not charged were in the third vehicle. The record does not indicate whether the third vehicle contained any weapons.

After the undercover officer indicated that she needed to leave the parking lot to obtain the cash for the purchase, she gave a signal, and officers moved in and arrested the occupants of all the vehicles. A search warrant was then executed at the house where many of those arrested, including both appellants, were staying. Officers recovered an additional eleven ounces of methamphetamine, forty pounds of marijuana, a sawed-off shotgun, $24,200 in cash, and Western Union receipts for $57,000 in wire transfers. Urquidez-Tellez went to trial where he was convicted by a jury. All of the remaining members of the conspiracy pled guilty.

A. Urquidez-Tellez's Role in the Conspiracy

Urquidez-Tellez, who was the cousin of another member of the conspiracy, lived in Arizona until shortly before the second methamphetamine purchase. When the second purchase took place, he was in a Minnesota hospital undergoing surgery for a hernia. Urquidez-Tellez gave a false name and false date of birth when he checked into the hospital. He was released on the morning of August 28, 2003. His doctor told him to go home and get bed rest. Instead, he rode with a co-defendant to the location of the third methamphetamine purchase which occurred that afternoon. This co-defendant testified at trial that Urquidez-Tellez was present when the third methamphetamine purchase was planned and that Urquidez-Tellez touched the .357 magnum in the vehicle en route to the transaction.

## B. Salvador's Role in the Conspiracy

Salvador's primary role in the conspiracy was to serve as a translator because he was the only member of the group that spoke English. He served in this role at all three of the methamphetamine transactions. During the second transaction, he also personally handed the drugs to the undercover officer. Salvador also made bank deposits for a co-conspirator.

## II. Urquidez-Tellez's Appeal

The standard of review for a claim that the evidence was insufficient to support a conviction is strict. United States v. Hamilton, 332 F.3d 1144, 1149 (8th Cir. 2003) (quoting United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003)). This Court must view the evidence in "the light most favorable to the government, resolving conflicts in the government's favor, and accepting all favorable inferences that support the verdict." Id. at 1148. The verdict must be upheld if "there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." Id. at 1149.

## A. The Drug Convictions

Urquidez-Tellez was convicted of conspiracy to distribute methamphetamine and possession with intent to distribute thirteen ounces of methamphetamine. A conspiracy conviction requires proof that the defendant entered into an agreement with at least one other person to sell methamphetamine. United States v. Rodgers, 18 F.3d 1425, 1428-29 (8th Cir. 1994). A conviction for possession with intent to distribute requires "knowing" possession of the methamphetamine. United States v. Barrow, 287 F.3d 733, 736 (8th Cir. 2002). "Proof of constructive possession is sufficient to satisfy the element of knowing possession." United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997).

Urquidez-Tellez contends there was not sufficient evidence to support his conviction. The crux of his argument is that he was not known to law enforcement prior to his arrest on August 28, 2003. The fact that he was not previously known to law enforcement does not mean, however, that he was not involved in the conspiracy. Urquidez-Tellez was present at the third transaction where the members of the conspiracy planned to sell thirteen ounces of methamphetamine.[2] He was in the car that contained the drugs, and a co-conspirator testified that Urquidez-Tellez knew the location of the drugs. Knowledge of the presence of contraband, plus the ability to control that contraband either directly or through another person establishes constructive possession. See, e.g., United States v. Johnson, 18 F.3d 641, 647 (8th Cir. 1994). Although Urquidez-Tellez was not the only person in the vehicle, constructive possession can be joint. Id. Urquidez-Tellez was also related to a member of the conspiracy and was staying with members of the conspiracy in a house where additional methamphetamine was found. Furthermore, a reasonable jury could infer that Urquidez-Tellez gave false information to the hospital because he was participating in a criminal enterprise and/or that he would not have disobeyed doctor's orders to sit in a vehicle in a parking lot if he was not actively participating in the drug transaction that was taking place. In summary, we find that there was sufficient evidence for a reasonable jury to find Urquidez-Tellez guilty beyond a reasonable doubt on the two drug charges.

B. The Gun Conviction

Urquidez-Tellez was also convicted of possession of a firearm in conjunction with a drug trafficking offense. For this conviction to stand, a reasonable jury must have been able to find that Urquidez-Tellez possessed a firearm and that there was a nexus between his possession of the firearm and his drug trafficking activity. Hamilton, 332 F.3d at 1150.

---

[2] Although the terms of the sale were agreed to, the drug dealers were arrested before the money and the drugs changed hands.

-5-

In this case, Urquidez-Tellez occupied a vehicle that contained drugs. Within his reach was a loaded gun. A reasonable jury could infer that the purpose of the weapon was to protect the drugs or the drug dealers if anything went wrong during the sale. United States v. Williams, 104 F.3d 213, 215 (8th Cir. 1997). Another occupant of the vehicle testified that Urquidez-Tellez knew of the weapon's presence and touched it on the way to the drug transaction. Thus, we find that there was sufficient evidence for a reasonable jury to find Urquidez-Tellez guilty beyond a reasonable doubt on the gun charge.

III. Salvador's Appeal

Salvador asserts that the district court erred when it failed to grant him a reduction in sentence under United States Sentencing Guideline § 3B1.2 on the basis that he was a minor participant in the conspiracy. "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." United States v. Belitz, 141 F.3d 815, 818 (8th Cir. 1998). The burden was on Salvador to establish his entitlement to the reduction. United States v. Johnson, 358 F.3d 1016, 1018 (8th Cir. 2004). A district court's factual determination of whether a defendant was a minor participant may only be reversed if clearly erroneous. Id. at 1017-18.

In addressing Salvador's request for a reduction the district court stated:

> . . . I tell you that I cannot grant your lawyer's motion or his request that you be considered a minor participant. You knowingly participated in a drug crime, and your lawyer says mostly what you did was interpret. To some extent he is correct. But you were caught in an automobile, in the front seat of an automobile, with a loaded firearm between you and the driver. A firearm with which some good people who were not

breaking the law could potentially have been killed. And that does not suggest a minor participant to me.[3]

Salvador asserts that he was a minor player in the conspiracy because he had no decision-making authority and is therefore less culpable than the majority of his co-conspirators. However, establishing that a defendant is less culpable than others does not entitle the defendant to a minor role reduction if he is "deeply involved" in the offense. United States v. Bush, 352 F.3d 1177, 1182 (8th Cir. 2003). Although Salvador's primary role in the conspiracy was as a translator, this does not mean that he did not play an important role. He was present at all three of the methamphetamine transactions, and his ability to speak English facilitated the negotiations with the undercover officer. He handed the drugs to the undercover officer at one transaction. He rode to another transaction in a vehicle containing a loaded weapon. Thus, despite his lack of decision-making authority, his role could reasonably be deemed significant. The fact that Salvador received little money from his role in the conspiracy is not dispositive. Belitz, 141 F.3d at 819 (finding no clear error in the failure to grant a minor participant reduction although the defendant had received no profits from his role in the conspiracy). Evaluating the above factors, we find no clear error in the district court's determination that Salvador was not a minor player.

---

[3] Salvador argues that the district court denied him the minor role reduction solely because of the involvement of the firearm. We do not read the district court's statement so narrowly. After a careful review of the record, we find no clear error in the district court's decision, and we do not intend our opinion to stand for the proposition that the possession of a firearm, in and of itself, prevents a reduction in sentence for serving a minor role in a conspiracy.

IV. Conclusion

We find that there was sufficient evidence for a reasonable jury to convict Urquidez-Tellez on each count he appeals. We also find no clear error in the district court's denial of a sentence reduction to Salvador. Accordingly, we affirm the judgments of the district court.

_____