# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-2228

_____

United States of America,              *

                              *

         Appellee,           *

                              *      Appeal from the United States

     v.                    *      District Court for the

                              *      District of Nebraska.

Manuel Cubillos,               *

                              *

         Appellant.        *

_____

Submitted:  November 17, 2006
Filed:  January 26, 2007

_____

Before BYE, BOWMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Manuel Cubillos appeals his conviction for conspiracy to distribute or possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1) and 846. He also appeals the sentence of 151 months' imprisonment imposed by the district court.[1] For the reasons discussed below, we affirm the conviction and sentence.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I.   BACKGROUND

On March 3, 2005, law enforcement officers intercepted Raul Jimenez driving 9.8 pounds of methamphetamine from Minnesota to Norfolk, Nebraska. As a result of the associated investigation, a federal grand jury indicted Manuel Cubillos on one count of conspiracy to distribute or possess with intent to distribute methamphetamine. The case proceeded to jury trial.

At trial, the Government introduced evidence from authorized FBI telephone intercepts and testimony from four co-conspirators to demonstrate the parameters of the conspiracy and Cubillos's involvement. FBI Special Agent Drew Armstrong testified that on February 28, 2005, the FBI intercepted a telephone call from Pablo Landin of Norfolk, who had been the subject of a lengthy FBI investigation. In the telephone conversation, Landin asked an unidentified individual to deliver four pounds of methamphetamine to Norfolk. Over the next few days, additional intercepted telephone conversations enabled FBI agents to determine that Jimenez would be driving methamphetamine from Minnesota to Landin's house in Norfolk on Highway 81 in a green minivan with a Minnesota license plate. The FBI notified the Nebraska State Patrol to watch for the vehicle. Nebraska State Trooper Timothy Stopak testified that he identified a vehicle matching the description and clocked it traveling in excess of the posted speed limit. Trooper Stopak initiated a traffic stop, and Jimenez consented to a search of the vehicle. Trooper Stopak discovered the 9.8 pounds of methamphetamine in the vehicle.

Special Agent Armstrong also testified that the FBI was conducting authorized telephone intercepts of Norfolk resident Jesus "Jesse" Padilla and the telephone line for Padilla's business, an auto-mechanic shop. Five of these intercepted calls were introduced into evidence during the testimony of Mary Moler-Cubillos, Cubillos's ex-wife and co-defendant. In one call from November 2004, Moler-Cubillos asked Padilla if she could obtain methamphetamine, and Padilla referred her to Cubillos. In

another call intercepted a few days later, Moler-Cubillos, Cubillos and Padilla all discussed obtaining methamphetamine. Cubillos then went on military duty to Iraq and was absent from Norfolk until February 2005. In a final call intercepted on March 10, 2005, Cubillos and Padilla again discussed methamphetamine. Moler-Cubillos also testified that Cubillos provided her and others with methamphetamine in the fall of 2004 and in February 2005.

Co-conspirator Benjamin Sukup testified that in the fall of 2004 he was buying about one pound of methamphetamine per month from Padilla and reselling almost all of it. Sukup knew that Padilla was obtaining the methamphetamine from Landin because he occasionally accompanied Padilla to Landin's home to make those purchases. Sukup testified that he sold one to four "eight-balls," or one-eighth-ounce quantities, of methamphetamine to Cubillos every one to two days. Sukup would often make these sales to Cubillos at Padilla's shop. Sukup testified that these sales resumed for about a week when Cubillos returned to Norfolk in February 2005. Sukup also testified that Padilla made him aware of Landin's incoming methamphetamine shipment in March 2005 and told him that Landin would "have us covered" with high-quality methamphetamine.

Co-conspirator Mollie Moler, an adult daughter of Moler-Cubillos and step-daughter of Cubillos, also testified. Moler lived with Padilla and was a friend of Landin. Moler testified that she delivered methamphetamine and cocaine from Landin to Cubillos in the spring of 2005. Moler purchased packaging materials for the methamphetamine shipment expected by Landin on March 3, 2005, and she was waiting for the shipment at Landin's house that day. Landin had given Moler a sample of the methamphetamine, and, with Landin's knowledge, Moler had shared this sample with Cubillos and Moler-Cubillos.

Finally, co-conspirator Edgar Zavala-Lopez, an employee at Padilla's shop, testified that he was a frequent visitor at Landin's house. He first had met Landin

when Padilla instructed him to pick up drugs from Landin and deliver them to Cubillos. Eventually, Zavala-Lopez began purchasing methamphetamine from Cubillos. Zavala-Lopez testified that he overheard Landin on the phone stating that he expected a shipment of "four of coke . . . and four of ice [methamphetamine]" and that Cubillos was to receive the "ice" for distribution in Norfolk. On cross-examination, Zavala-Lopez also stated that Cubillos himself had told Zavala-Lopez that Cubillos would be receiving some of that methamphetamine.

The jury returned a verdict of guilty, and the district court denied Cubillos's motion for judgment of acquittal or, in the alternative, for a new trial. Cubillos was sentenced to 151 months' imprisonment. He now appeals his conviction, arguing that (1) the evidence was insufficient to support the conviction, (2) he was prejudiced by evidence of multiple conspiracies, and (3) the district court erred in rejecting his proposed theory-of-defense instruction. He also appeals his sentence, arguing that (1) he should have received a minor role reduction, (2) he should have received a downward departure based on his extensive military service, and (3) his sentence was unreasonable.

## II. DISCUSSION

### A. Sufficiency of the Evidence

With respect to the denial of Cubillos's motion for judgment of acquittal,[2] we review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government, making all reasonable inferences and credibility determinations in support of the jury's verdict. *United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006). "We will reverse a conviction for lack of sufficient evidence only if no reasonable juror could have concluded beyond a reasonable doubt the

---

[2]Cubillos does not appeal the denial of his alternative motion for a new trial.

government met its burden of proof as to each element of the offense." *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006).

The elements of conspiracy are (1) the existence of an agreement to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) the defendant's knowing participation in the agreement. *United States v. Johnson*, 439 F.3d 947, 954 (8th Cir. 2006). The agreement may be a tacit understanding rather than a formal, explicit agreement. *Id.* "[E]vidence of association or acquaintance is a relevant factor but alone is insufficient to establish a conspiracy." *United States v. Winston*, 456 F.3d 861, 866 (8th Cir. 2006).

Cubillos contends that the evidence, even in the light most favorable to the Government, shows only that he was acquainted with members of the conspiracy and had a methamphetamine buyer-seller relationship with some of them. We disagree. Sukup's testimony showed that Landin regularly supplied methamphetamine for resale to Padilla, who was providing it to Sukup, who was in turn selling it to Cubillos at Padilla's shop. Moler-Cubillos testified that she and others obtained methamphetamine from Cubillos, and Zavala-Lopez also testified to obtaining methamphetamine from Cubillos. Moler testified that she delivered methamphetamine directly from Landin to Cubillos and provided Cubillos with a sample of the shipment Landin was expecting to receive on March 3, 2005. Zavala-Lopez testified that he overheard Landin stating that the methamphetamine shipment was destined to be distributed by Cubillos. This testimony, if believed, is more than sufficient to allow a reasonable juror to conclude that Cubillos had at least a tacit agreement to participate in the distribution of methamphetamine. Cubillos challenges the believability of much of this testimony, but "[w]e are obliged to defer to the jury's determination of the credibility of the witnesses." *United States v. Lopez*, 443 F.3d 1026, 1031 (8th Cir. 2006) (en banc), *cert. denied*, ___ U.S. ___, 127 S. Ct. 214 (2006). Therefore, we hold that the evidence was sufficient to support the jury's verdict.

## B.    Evidence of Multiple Conspiracies

Cubillos contends that the Government offered proof of multiple conspiracies at trial, creating a variance from the single conspiracy charged in the indictment. In essence, Cubillos argues that the evidence was not sufficient to connect him to the large quantity of methamphetamine seized from the green minivan. Whether the Government's proof at trial established only a single conspiracy or multiple conspiracies is a question of fact, reviewed for clear error. *United States v. Benford*, 360 F.3d 913, 914 (8th Cir. 2004). "We will reverse only if we find the evidence adduced at trial does not support a finding of a single conspiracy, and we determine [the defendant] was prejudiced by the variance." *Id.*

To determine whether the evidence suggests a single conspiracy or multiple conspiracies, we consider factors such as "the nature of the activities, the location where the alleged events of the conspiracy occurred, the identity of the co-conspirators, and the time frame." *United States v. Burns*, 432 F.3d 856, 863 (8th Cir. 2005). In the instant case, all of the Government's evidence involved the same individuals—Landin, Padilla, Cubillos, Zavala-Lopez, Sukup, Moler and Moler-Cubillos—working with each other to conduct the same activity, distribution of methamphetamine, in the same location, Norfolk, throughout the time frame alleged in the indictment, September 2004 through June 2005. As a result, the evidence "amply supports" the jury's conclusion that Cubillos was guilty of the single conspiracy charged. *See Benford*, 360 F.3d at 914; *see also Burns*, 432 F.3d at 863-64 (affirming the district court's rejection of a multiple conspiracy instruction where "the evidence showed an agreement to distribute methamphetamine involving the same individuals in the same locations . . . throughout the time period"). Furthermore, the district court thoroughly instructed the jury on multiple conspiracies, including the jury's duty to acquit if it found Cubillos participated only in some conspiracy other than the one charged, thereby vastly reducing any risk of prejudice from a variance.

*See United States v. Morales*, 113 F.3d 116, 120 (8th Cir. 1997).[3] As a result, we find no error in Cubillos's conviction on the single conspiracy charged in the indictment.

## C. Theory-of-Defense Instruction

Cubillos contends that the district court erred in rejecting his proffered theory-of-defense instruction. We review the district court's formulation of jury instructions for abuse of discretion. *United States v. Milk*, 281 F.3d 762, 768 (8th Cir. 2002). "Generally, the defendant is not entitled to any particular instruction if the given instructions, 'when viewed as a whole, correctly state the applicable law and adequately and fairly cover the substance of the requested instruction.'" *Id.* (quoting *United States v. Parker*, 32 F.3d 395, 400 (8th Cir. 1994)).

Cubillos requested a jury instruction stating that, if the jury found he was a mere buyer and user of methamphetamine, he would not be a member of the charged conspiracy. The district court refused the instruction on the grounds that it was already covered by Jury Instruction No. 9, which stated:

> You should understand that merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person has joined in an agreement or understanding. A person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose of one, does not thereby become a member.

We previously have held that this same instruction correctly states the applicable law and adequately and fairly covers the substance of a "mere buyer"

---

[3]The Government's evidence included some indications of a separate conspiracy to distribute cocaine, but Cubillos does not argue he was prejudiced by this evidence. We would find that this ancillary evidence was not prejudicial in any event.

theory-of-defense instruction such as the one requested by Cubillos. *See United States v. Hester*, 140 F.3d 753, 757 (8th Cir. 1998). Accordingly, we find that the district court did not abuse its discretion in rejecting Cubillos's proffered theory-of-defense instruction.

### D. Sentencing

The Presentence Investigation Report determined Cubillos to have a total offense level of 34 and a criminal history category of II. The district court granted a one-category downward departure to criminal history category I under United States Sentencing Guidelines § 4A1.3, resulting in an advisory guidelines range of 151 to 188 months. The district court denied a request for a § 3B1.2 minor-role reduction and a motion for a § 5K2.0 downward departure. Cubillos was sentenced to 151 months' imprisonment, the lower end of the advisory guidelines range.

Cubillos first argues that he should have received a § 3B1.2 minor-role reduction. We review the district court's decision regarding a minor-role reduction for clear error. *United States v. Salvador*, 426 F.3d 989, 993 (8th Cir. 2005). "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." *Id.* (quotation omitted). However, "merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was 'deeply involved' in the offense." *United States v. Bush*, 352 F.3d 1177, 1182 (8th Cir. 2003). The defendant bears the burden of establishing entitlement to the reduction. *Salvador*, 426 F.3d at 993.

The evidence before the district court showed that Cubillos's role was to distribute methamphetamine, the intended object of the conspiracy. This is more than

sufficient to show deep involvement in the offense. *Cf. United States v. Lopez-Vargas*, 457 F.3d 828, 831 (8th Cir. 2006) (affirming the denial of a minor-role reduction to a conspirator whose role was to transport the cash proceeds from a narcotics conspiracy); *Salvador*, 426 F.3d at 994 (affirming the denial of a minor-role reduction to a conspirator whose "primary role in the [narcotics] conspiracy was as a translator"). In particular, we have consistently rejected Cubillos's argument that a distributor of controlled substances deserves a minor-role reduction simply because of the presence of a larger-scale upstream distributor. *See, e.g.*, *United States v. Thompson*, 60 F.3d 514, 517 (8th Cir. 1995) ("Taken to its logical conclusion, Thompson's position would mean that every participant in every drug distribution scheme would be presumably entitled to a minor participant reduction so long as he or she were able to prove the existence of an upstream drug supplier. We reject this logic . . . ."). Therefore, the district court did not clearly err in denying a minor role reduction for Cubillos.

Cubillos next contends that the district court should have granted him a § 5K2.0 downward departure based on his military service and associated post-traumatic stress disorder. "The discretionary denial of a motion for downward departure is unreviewable unless the court failed to recognize its authority to depart." *United States v. Vasquez*, 433 F.3d 666, 670 (8th Cir. 2006) (quotation omitted). In the instant case, the sentencing transcript reflects that the district court recognized its authority to depart while considering Cubillos's motion for a downward departure. As a result, the district court's denial of the motion is unreviewable.

Finally, Cubillos argues that his sentence is unreasonable with respect to the factors set forth in 18 U.S.C. § 3553(a). Our review of a sentence for reasonableness is akin to our traditional review for abuse of discretion. *United States v. Lazenby*, 439 F.3d 928, 931-32 (8th Cir. 2006). A district court imposes an unreasonable sentence if it:

fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

*United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S. Ct. 276 (2005).

Cubillos contends that the district court should have imposed a shorter sentence based on Cubillos's military career, his post-traumatic stress disorder and his drug dependency. The record reflects that the district court took these factors into account in determining Cubillos's sentence, and we cannot say that the sentence imposed "lies outside the limited range of choice dictated by the facts of the case." *Id.* Accordingly, we hold that Cubillos's sentence is reasonable.

## III.   CONCLUSION

We conclude that the evidence was sufficient to support Cubillos's conviction on the charged conspiracy and that the district court did not err in rejecting Cubillos's proposed theory-of-defense instruction or in imposing his sentence. Therefore, we affirm the conviction and sentence.

_____