# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-1133

_____

United States of America

*Plaintiff - Appellee*

v.

John Alemoh Momoh

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 15, 2012
Filed: August 8, 2012
[Unpublished]

_____

Before MURPHY, BRIGHT, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

John Alemoh Momoh pled guilty to health-care fraud in violation of 18 U.S.C. § 1347. The district court[1] sentenced Momoh to 24 months (2 years) in

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

prison plus three years of supervised release and adopted the government's loss finding of $656,876.59. In his appeal, Momoh contends the district court: (1) committed procedural error by refusing him an evidentiary hearing to rebut the government's determination of the loss amount, (2) incorrectly relied on the government's proposal relating to two factors in the Sentencing Guidelines to arrive at his sentence, and (3) should have departed downward from the Sentencing Guidelines because this case lies outside the heartland of health-care fraud cases. We affirm.

## BACKGROUND

Momoh owned and operated a home-care agency called HopeCare Services, Inc. ("HopeCare"), located in Brooklyn Park, Minnesota. HopeCare's mission was to provide personal-care services to those who require assistance to remain in their homes. These services included feeding, bathing, and caring for the sick and disabled. Momoh employed individuals, known as personal-care assistants, to provide services to HopeCare's clients.

In 2003, Momoh enrolled HopeCare as a personal-care-assistance agency with the Minnesota Department of Human Services ("Minnesota DHS") and signed a Provider Agreement ("the Agreement"). The Agreement provides, in part:

> As a participating provider in health service programs administered by the Minnesota Department of Human Services, the provider agrees to the terms and conditions as set forth below.
> . . .
> C. To **comply with all federal and state statutes and rules** relating to the delivery of services to individuals and to the submission of claims for such services.
> . . .

F. To **assume full responsibility for the accuracy of claims** to the Department of Human Services in accordance with the certification requirements of 42 Code of Federal Regulations, section 455.18 and Minnesota Statutes, section 256B.27, subd. 2.

. . .

H. To submit claims only for services . . . that are **medically necessary**, **that meet professionally recognized standards of health care**, that the provider knows or has reason to know are properly reimbursable under federal and state statutes and rules.

(CR 253.)

In May 2007, the Minnesota DHS sent Momoh a Notice of Agency Action regarding his billing of personal-care-assistance services. The notice informed Momoh he had improperly billed Medicaid for 783.50 hours of personal-care-assistance services, worth $12,160.50, for one of his clients, K.B.[2] The notice revealed other problems with Momoh's billing practices, which included: (1) overbilling Medicaid for undocumented personal-care-assistance services, (2) discrepancies in the personal-care assistant identified as the treating provider and the one actually performing the services, (3) timecards lacking the hours worked by the personal-care assistant and client signatures, and (4) changing hours on the timecards after the personal-care assistant faxed them to HopeCare.

Thereafter, members of the Minnesota DHS's Surveillance and Integrity Review Section ("SIRS") met with Momoh. The SIRS personnel informed Momoh of his billing problems, as noted in the May 2007 notice. In response, Momoh repaid the overbilled amount of unsupported claims in the K.B. matter. However, a

---

[2]Medicaid is a state and federal health care benefit program for the poor and disabled. Minnesota Medicaid pays for personal-care-assistance services for qualifying recipients. *See generally* Minn. Stat. §§ 256B.0625, subd. 19a; 256B.0659.

subsequent SIRS audit showed Momoh continued to falsely bill Medicaid. Consequently, the SIRS withheld all future payment from HopeCare and referred the case for prosecution.

In April 2011, a federal grand jury issued a 41-count indictment against Momoh for health-care fraud in violation of 18 U.S.C. § 1347 and identity theft related to the fraud in violation of 18 U.S.C. § 1028A. Pursuant to a plea agreement with the government, Momoh pled guilty to count 2 of the indictment and the remaining 40 counts were dismissed. The parties agree, per the plea agreement, that the offense conduct summarized in the indictment could be considered relevant conduct at sentencing. The parties did not, however, agree on the loss amount attributable to Momoh's conduct, reserving that issue for sentencing.

The parties also executed and filed a stipulation regarding sentencing, which states, "[t]he Parties, by and through their counsel, stipulate and agree that they will file affidavits in lieu of oral testimony in support of their respective sentencing positions and the contested issue of loss amount." The stipulation further provides the government's sentencing exhibits "are admissible in evidence."

Before sentencing, Momoh requested an extension of time to file his sentencing brief because "defense counsel need[ed] additional time to obtain affidavits in lieu of live testimony . . . ." The district court granted Momoh's request. The parties then filed sentencing briefs, including affidavit testimony regarding the loss amount. Along with its sentencing brief, the government submitted a spreadsheet reflecting its analysis of the loss attributable to Momoh's conduct, which totaled $656,876.59. The total loss amount was determined by a senior investigator at the Minnesota Office of the Attorney General's Medicaid Fraud Control Unit by comparing HopeCare's timesheets for the Indictment period with HopeCare's billings to Medicaid. The results are also reflected in the Presentence Report ("PSR").

The district court heard oral argument on the loss issue and found the government had shown by a preponderance of the evidence that the loss attributable to Momoh's conduct amounted to $656,876.59, as set forth in the PSR. Using this loss figure, the district court applied a fourteen-level loss enhancement under U.S.S.G. § 2B1.1(b)(1)(H) and subtracted three levels for acceptance of responsibility, arriving at an offense level of seventeen, with a criminal history category I. The district court denied Momoh's request for a downward departure under U.S.S.G. § 5K2.0 for lack of criminal intent, and sentenced Momoh to 24 months (2 years) in prison, with three years of supervised release, and ordered him to pay $656,876.59 in restitution to Minnesota DHS.

Momoh appeals the district court's refusal to grant him an evidentiary hearing, its determination of the loss amount, and its refusal to depart downward in imposing the sentence.

## DISCUSSION

### I. Request for Evidentiary Hearing

This court reviews a district court's decision to deny an evidentiary hearing for abuse of discretion. *United States v. Granados*, 202 F.3d 1025, 1027 (8th Cir. 2000).

Momoh contends the district court's refusal to hold an evidentiary hearing at sentencing precluded admission of evidence that would have lowered the loss amount and resulted in a smaller enhancement. At sentencing, the district court may permit the parties to introduce evidence regarding their objections. Fed. R. Crim. P. 32(i)(2). The Sentencing Guidelines also advise the district court to give the parties "an adequate opportunity to present information" regarding a disputed factor important to the sentencing. U.S.S.G. § 6A1.3(a).

However, we need not review the district court's decision as Momoh expressly waived this argument by virtue of the parties' stipulation. A waiver extinguishes a claim altogether. *See United States v. Jones*, 662 F.3d 1018, 1027 (8th Cir. 2011) (waived claims are unreviewable on appeal). As set forth in the stipulation, the parties agreed "that they will file affidavits in lieu of oral testimony in support of their respective sentencing positions and the contested issue of loss amount." Momoh, therefore, agreed to submit the loss amount issue on the papers rather than via an evidentiary hearing.

Momoh's contention that he should have been allowed to put forth witness testimony at sentencing is also belied by the district court's consideration of the record, which shows Momoh submitted affidavits of two personal-care assistants, a software engineer, and a HopeCare client. At sentencing, the district court stated it had "reviewed the matter," which it considered "substantially briefed." The district court acknowledged the difficulty of the accounting involved before adopting the loss amount of $656,876.59.

Based on the record as stated above, we affirm the district court's decision not to hold an evidentiary hearing at sentencing.

## II. Loss Amount

This court reviews the imposition of a sentence under a deferential abuse-of-discretion standard. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quotation omitted) (en banc). We first ask whether the district court committed a "significant procedural error." *Id.* In doing so, the district court's interpretation and application of the Sentencing Guidelines is reviewed de novo, and its factual findings for clear error. *United States v. Rivera-Mendoza*, 682 F.3d 730, 733 (8th Cir. 2012) (citation omitted).

Application Notes 3(F)(v) and (viii) of U.S.S.G. § 2B1.1 state, respectively:

> **(v) Certain Other Unlawful Misrepresentation Schemes.**—In a case involving a scheme in which (I) services were fraudulently rendered to the victim by *persons falsely posing as licensed professionals*; (II) *goods* were falsely represented as approved by a governmental regulatory agency; or (III) *goods* for which regulatory approval by a government agency was required but not obtained, or was obtained by fraud, loss shall include the amount paid for the property, services or goods transferred, rendered, or misrepresented, *with no credit provided for the value of those items or services*.
>
> . . .
>
> **(viii) Federal Health Care Offenses Involving Government Health Care Programs.**—In a case in which the defendant is convicted of a Federal health care offense involving a Government health care program, *the aggregate dollar amount of fraudulent bills submitted to the Government health care program* shall constitute prima facie evidence of the amount of the intended loss, *i.e.*, is evidence sufficient to establish the amount of the intended loss, if not rebutted.

U.S.S.G. § 2B1.1 cmt. n.3(F)(v), (viii) (emphasis added). Momoh contends the district court erred by applying notes 3(F)(v) and 3(F)(viii) in determining the loss amount. Specifically, Momoh argues note 3(F)(v) is inapplicable under the circumstances and note 3(F)(viii) was not in effect at the time of his conduct.

The record reflects no reliance by the district court on notes 3(F)(v) and 3(F)(viii) in determining the loss amount. The district court explained at sentencing it would adopt the government's loss amount based on the "forensic accounting— that's occurred in this matter, because it is very, very difficult to bring these numbers, and so forth, into place and to make rationality out of them when the original documentation is incomplete and inaccurate, at best."

The district court did not commit clear error in determining the loss amount and we therefore affirm. *See United States v. Miell*, 661 F.3d 995, 1001 (8th Cir. 2011) (giving "particular deference to the loss determination because of the district court's unique ability to assess the evidence and estimate the loss").

## III. Request for Downward Departure

This court reviews de novo a district court's interpretation and application of the Sentencing Guidelines, and its findings of fact for clear error. *Rivera-Mendoza*, 682 F.3d at 733. A decision to depart from the Guidelines range is reviewed for abuse of discretion. *Id.*

The district court is not required to impose a sentence within the Guidelines range if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1). "If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland." *United States v. Rodriguez*, 414 F.3d 837, 848 (8th Cir. 2005) (citing *Koon v. United States*, 518 U.S. 81, 96 (1996)). Momoh contends the district court should have departed from the Sentencing Guidelines, pursuant to § 5K20, because this case falls outside the heartland.[3] However, this court has held "[t]he discretionary denial of a motion for downward departure

---

[3]Momoh also contends the district court should have applied U.S.S.G. § 2B1.1, cmt. n.3(E), which provides credit against loss in certain circumstances. Note 3(E) provides credit for services rendered "*to the victim* before the offense was detected . . . ." The victim in this case is Medicaid and not HopeCare's clients. Therefore, note 3(E) is inapplicable.

[pursuant to § 5K2.0] is unreviewable unless the court failed to recognize its authority to depart." *United States v. Cubillos*, 474 F.3d 1114, 1120 (8th Cir. 2007) (quotation omitted).

At sentencing, the district court acknowledged its authority to depart, stating:

> a number of very eloquent arguments have been made on your behalf relating to the 3553(a) factors. I'm not going to go into them individually or detail them because they're very well known by everybody in the room. But I'm going to tell you that your case does not fall out of that heartland. Your case does not fall into those 3553(a) factors that should cause this case to depart from that which is considered to be just what it is, the violation of law, based upon the loss that resulted and that lead to the numbers that are involved in establishing of a guideline sentence.

Further, there is no argument the district court had an unconstitutional motive in refusing to depart downward. *United States v. Sykes*, 356 F.3d 863, 865 (8th Cir. 2004) ("Absent an unconstitutional motive, the extent to which a district court exercises its discretionary authority to depart downward is not subject to review.").

As the record reflects, Momoh received a Notice of Agency Action regarding his billing of personal-care-assistance services. The notice informed Momoh he had improperly billed Medicaid for 783.50 hours of personal-care-assistance services for one of his clients, K.B. The notice also informed Momoh that the Minnesota DHS investigators found numerous problems with his billing. After meeting with Momoh, the SIRS personnel informed Momoh of his billing problems, as noted in the May 2007 notice. Nonetheless, a subsequent SIRS audit showed Momoh continued to falsely bill Medicaid. In light of Momoh's conduct, the district court chose to sentence Momoh at the bottom of the Guidelines range, stating:

Based on the facts set forth in the PSR and those noted above . . . . The Court finds that, pursuant to § 3553(a), a sentence within the guidelines range is appropriate in this case because it is sufficient, but not greater than necessary, to meet the goals of § 3553(a), including just punishment, deterrence, public safety, and the promotion of the law. In imposing this sentence, the Court rejects Defendant's challenge to the Government's amount-of-loss calculation, which was corroborated by the Probation Office in the [PSR]. Defendant's challenge provided no supported basis upon which to undermine the amount as set forth by the Government.

The district court carefully considered the facts and circumstances and determined the crime did not merit a sentence outside the Guidelines range.

On these facts, we conclude the district court did not abuse its discretion in refusing to depart downward.

## CONCLUSION

For the foregoing reasons, we **affirm** the district court's judgment.

_____