# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3515

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Joseph M. Mabery, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 19, 2012
Filed: July 26,2012

_____

Before LOKEN and SHEPHERD, Circuit Judges, and GERRARD,[1] District Judge.

_____

GERRARD, District Judge.

Joseph Mabery was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The district court[2] sentenced Mabery to 327 months' imprisonment. Mabery appeals, contending that evidence of the firearm should have been suppressed, that the evidence was insufficient to sustain

_____

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

his conviction, and that his sentence is excessive. Finding no merit to Mabery's contentions, we affirm his conviction and sentence.

I

Officers Zachary True and James Cisneros of the Kansas City, Missouri, Police Department were on patrol on April 14, 2010. At about 3 a.m., they saw a Jeep in an apartment building parking area. The Jeep was backed in, facing the street; the dome light was on and the vehicle was occupied. True said that when the occupant of the vehicle saw the police, the occupant tried "to kind of hide from me and turn the dome light out in the vehicle." True said that there had been "trouble with this apartment complex[,]" so he stopped, backed up, and spotlighted the Jeep. Cisneros activated the rear emergency lights on the police car, because the car was stopped in the street, blocking traffic.

The Jeep's door opened, and Mabery got out. Mabery dropped a cell phone, a phone charger, and a bag. Then he ran behind the Jeep and along a building toward some trees, away from the police. True pulled the police car into the parking lot. Cisneros pursued Mabery while True used his police car radio to call for backup. After calling for backup, True drove his car out of the parking lot in pursuit of Mabery. He found Mabery and Cisneros struggling about a half-block away, and helped Cisneros get Mabery handcuffed and into custody. True left Mabery sitting on the front steps of a residence with Cisneros and drove back to the Jeep.

As Cisneros was asking for Mabery's name, Cisneros noticed that Mabery was reaching into his pants. Cisneros realized that he had forgotten to frisk Mabery. Cisneros put his notepad and pen away, and Mabery got up and started running again. Cisneros chased him and, after some more scuffling, was able to subdue him. This time, Cisneros held Mabery down until backup arrived. Mabery was still trying to

reach into his right front pocket. Cisneros was winded, so when other officers arrived he let them secure Mabery for transport.

Officer Jeffrey Runyan, also of the Kansas City Police Department, was driving the patrol wagon on the night of Mabery's arrest. Runyan searched Mabery before placing him in the back of the patrol wagon. Runyan found a gun in Mabery's right front pocket, which he gave to Cisneros to be taken as evidence. But the gun is not visible on the video recording made by equipment on the patrol wagon, because it was obscured by a bag Runyan had prepared to hold Mabery's personal property. Runyan explained that the video recording equipment is intended to show the inside of the patrol wagon when prisoners are being transported, not to document activity outside the wagon.

The bag Mabery dropped when he fled was later found to contain 109.95 grams of marijuana. And a digital scale was found in Mabery's pocket, along with 1.05 grams of methamphetamine.

Mabery was charged with one count of being a felon in possession of a firearm in violation of §§ 922(g)(1) and 924(e)(1). Mabery filed a motion to suppress any evidence obtained as a result of the "car check" that resulted in his arrest. He argued that the police had lacked reasonable suspicion to justify the warrantless "investigative stop" of the Jeep. The magistrate judge recommended that the motion be overruled, concluding that even if a "stop" had occurred, there was sufficient reasonable suspicion to justify the officers' conduct. The district judge adopted the bulk of the magistrate judge's report and recommendation, and denied Mabery's motion to suppress.

After a jury trial, Mabery was found guilty. The presentence investigation report set forth, among other things, that Mabery's possession of a firearm was in connection with a controlled substance offense. The presentence investigation report

concluded that Mabery's total offense level was 34, resulting in a recommended advisory Sentencing Guidelines range of 262 to 327 months' imprisonment. Mabery objected, asserting that the evidence was insufficient to show that his possession of the firearm was in connection with a controlled substance offense. The district court overruled his objection.

In determining the sentence to be imposed, the district court noted Mabery's extensive criminal history, which included several theft, assault, and drug charges. The court also noted that Mabery had never been lawfully employed. The court explained that of the factors relevant in sentencing, "public safety" was "the first and foremost of the factors that are concerning . . . ." So, the court concluded, "a sentence on the high end of the guidelines is necessary to reflect the seriousness of this offense, promote respect for the law, which is clearly lacking, and provide just punishment." Mabery was sentenced to 327 months' imprisonment, to be followed by five years' supervised release. He appeals.

II

Mabery argues that the district court erred in overruling his motion to suppress, convicting him despite insufficient evidence, finding that he possessed the firearm in connection with a controlled substance offense, and imposing a substantively unreasonable sentence.

A

Mabery first argues that the district court erred in overruling his motion to suppress. Mabery does not appear to dispute that there was probable cause to arrest him after he dropped contraband and fled the scene. Instead, Mabery focuses on the initial decision of the officers to stop their vehicle and spotlight Mabery's. This, Mabery contends, was an unlawful seizure.

The parties agree as to our standard of review on this issue: we review the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials. United States v. Clutter, 674 F.3d 980, 982 (8th Cir. 2012). We find no error here, because Mabery was not seized, within the meaning of the Fourth Amendment, before his suspicious behavior provided cause to arrest him.

Not every encounter between a police officer and a citizen constitutes a seizure under the Fourth Amendment. See United States v. Barry, 394 F.3d 1070, 1074 (8th Cir. 2005); United States v. Dockter, 58 F.3d 1284, 1286 (8th Cir. 1995); see also Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred. Terry, 392 U.S. at 19 n.16; Barry, 394 F.3d at 1074.

In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. Dockter, 58 F.3d at 1286 (quoting Florida v. Bostick, 501 U.S. 429, 439 (1991)); see also Barry, 394 F.3d at 1074-75. This test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Dockter, 58 F.3d at 1286 (quoting Michigan v. Chesternut, 486 U.S. 567, 573 (1988)). Circumstances indicative of a seizure would include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See id. (quoting United States v. Angell, 11 F.3d 806, 809 (8th Cir. 1993), abrogated on other grounds by Bailey v. United States, 516 U.S.

137 (1995)); see also Barry, 394 F.3d at 1075 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

None of those circumstances are present here, nor do the circumstances that are present indicate anything more than an otherwise-routine police-citizen encounter–at least, until Mabery fled the scene. Our decision in Barry, 394 F.3d 1070, is instructive on that point. In Barry, a police officer was on routine patrol when he noticed a vehicle with its headlights on parked in an alley behind a shopping mall. The officer, aware that the mall was closed, decided to investigate. When he drove into the parking lot, the vehicle's headlights shut off. The officer drove into the alley and parked at least fifteen feet in front of the other vehicle. He saw two people get into the vehicle, and he got out of his own car and approached. He knocked on the passenger's window twice, receiving no response. He knocked a third time, and when the passenger rolled down the window, the officer could smell air freshener and marijuana. The officer called for backup and detained the occupants. Id. at 1072.

We held that the officer's conduct in approaching the vehicle and knocking on the window did not amount to a show of authority such that a reasonable person would not believe he was at liberty to terminate the encounter and go about his business. In fact, we noted, the occupants' actions in ignoring the officer when he initially knocked suggested such a belief. We found that under the circumstances, the officer would probably have been remiss had he *not* approached the vehicle. So, we said, the vehicle's occupants "had simply encountered a police officer in a public place. No reasonable person would have believed he was seized at that point." Id. at 1075. We found it "implausible that parking a marked cruiser fifteen feet to fifteen yards away from a parked vehicle signifies a show of authority rather than a mere encounter." Id. at 1076; see also United States v. Gipp, 147 F.3d 680 (8th Cir. 1998) (no seizure where officer approached vehicle parked on frontage road for "welfare check" on occupants); Dockter, 58 F.3d 1284 (no seizure where officer pulled patrol car behind vehicle parked off road and activated amber warning lights); Angell, 11

-6-

F.3d 806 (no seizure where officer shined flashlight on occupants of vehicle and asked for identification); cf. United States v. Bynum, 508 F.3d 1134, 1137 (8th Cir. 2007) ("The act of looking through a car window is not a search for Fourth Amendment purposes because 'a person who parks a car–which necessarily has transparent windows–on private property does not have a reasonable expectation of privacy in the visible interior of his car.'") (citations omitted).

In this case, the act of shining a spotlight on Mabery's vehicle from the street was certainly no more intrusive (and arguably less so) than knocking on the vehicle's window. See United States v. Clements, 522 F.3d 790 (7th Cir. 2008) (no seizure where officers parked about fifteen to twenty feet behind suspicious vehicle, shined spotlight on it, and activated red and blue flashing lights). Officers True and Cisneros did nothing else that would support a demonstration of authority, such as draw their weapons or issue verbal commands. Compare, e.g., Brown v. City of Oneonta, 221 F.3d 329 (2d Cir. 2000) (seizure where officer shined spotlight and issued verbal command); Kraus v. County of Pierce, 793 F.2d 1105 (9th Cir. 1986) (seizure found where officers shined spotlights, drew weapons, and issued verbal commands). And, as in Barry, Mabery's actions belie a finding that Mabery did not feel free to leave the scene, because that's precisely what he tried to do.

Mabery relies heavily on the fact that when True stopped the patrol car to shine a spotlight on Mabery's Jeep, the patrol car (at least according to Mabery's interpretation of the record) was blocking the driveway to the parking lot in which the Jeep was parked. This, according to Mabery, meant that the Jeep had been "seized." The record on that point is not as conclusive as Mabery would like us to believe. But even if we accept the factual premise of Mabery's argument, we do not reach the same conclusion. Mabery cites no authority for the proposition that simply stopping a police car in the entrance to a parking lot effects a seizure of everyone parked there. The record does not establish that a vehicle in the parking lot (particularly a Jeep) would be unable to reach the street. Nor would blocking the parking lot driveway

establish a seizure of Mabery's *person*–he could have been free to leave, even if his vehicle had to remain parked. Simply put, we find nothing to support a finding that the position of the officers' patrol car transformed a "mere encounter" into a coercive seizure within the meaning of the Fourth Amendment.

In sum, we conclude that Mabery was not seized, for Fourth Amendment purposes, before he dropped his contraband and fled the police. Therefore, the district court did not err in denying Mabery's motion to suppress evidence.

B

Next, Mabery argues that the evidence is insufficient to support his conviction. To obtain a conviction under § 922(g)(1), the government must prove that the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year, that the defendant knowingly possessed a firearm, and that the firearm had been in or had affected interstate commerce. United States v. Cowling, 648 F.3d 690, 700 (8th Cir. 2011). Only Mabery's possession of the firearm is at issue here.

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences that may logically be drawn from the evidence. United States v. Shrum, 655 F.3d 782, 784 (8th Cir. 2011); see also United States v. Alexander, 679 F.3d 721, 726 (8th Cir. 2012). We avoid reweighing the evidence or assessing the credibility of the witnesses, and reversal is warranted only if no reasonable jury could have found guilt beyond a reasonable doubt. See United States v. Herbst, 666 F.3d 504, 510 (8th Cir. 2012).

Mabery notes that the government presented three witnesses at trial: True, Cisneros, and Runyan. True did not see Mabery with a weapon. Cisneros was not

watching when the firearm was discovered. And while Runyan testified that he recovered the firearm from Mabery, the firearm was obscured on the patrol wagon video recording by the property bag Runyan had prepared. Mabery also places a great deal of emphasis on some remarks that can be overheard on the recording during the arrest. Cisneros' sergeant said, "Let's figure out exactly what we got on him." And another, unidentified officer said to Mabery (presumably after Mabery identified himself), "Okay, here's the deal. Don't bullshit me on your name. If you're lying to me about your friggin' name, I'm gonna throw other shit on you." An unidentified officer also told Mabery, "We're gonna pull up your picture. If you lie, it'll be your ass."

Mabery seems to be implying that he was framed. But Mabery could, and did, cross-examine the witnesses about the remarks heard on the recording. And Mabery could, and did, present his theory of the case to the jury. In closing, Mabery's counsel argued that "the firearm appears in the wake of the arrival of all these officers, who in no uncertain terms, expressed to Mr. Mabery what their intentions are." The jury rejected this argument and found Runyan's testimony to be credible. Our standard of review precludes us from revisiting that determination or reweighing the evidence, and there is clearly sufficient evidence in the record to support the verdict.

C

Finally, Mabery claims that the district court committed two errors in sentencing him. We review a district court's sentence for abuse of discretion. United States v. Bryant, 606 F.3d 912, 918 (8th Cir. 2010). Under this standard, we initially review a sentence for any claimed procedural error and then, if necessary, for substantive reasonableness. See id. Procedural errors include such things as improperly calculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. See

United States v. Nissen, 666 F.3d 486, 490 (8th Cir. 2012); Bryant, 606 F.3d at 918. If the decision is procedurally sound, we review the substantive reasonableness of the sentence, considering the totality of the circumstances. Bryant, 606 F.3d at 920-21.

First, Mabery claims that the district court made a procedural error in calculating the advisory Guidelines range. In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the Guidelines de novo. United States v. Frausto, 636 F.3d 992, 994 (8th Cir. 2011); see also United States v. Hull, 646 F.3d 583, 586 (8th Cir. 2011). Mabery argues that the court erred in finding that he used or possessed the firearm in connection with a controlled substance offense. See U.S.S.G. § 4B1.4(b).

A "controlled substance offense" is an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. U.S.S.G. § 4B1.2(b). Mabery argues that there was no direct evidence that he was involved in the sale or distribution of a controlled substance, and that he had no history of distributing controlled substances.

But Mabery was found in possession of a firearm, a digital scale, and drugs. And Mabery dropped 109.95 grams of marijuana when he fled–an amount sufficient to support a conclusion that he possessed the marijuana with intent to distribute. See United States v. Nolen, 536 F.3d 834 (8th Cir. 2008). In sum, the circumstances of Mabery's arrest provide ample evidence that he possessed the firearm in connection with a controlled substance offense, and the district court's conclusion to that effect was not clearly erroneous.

Finally, Mabery contends that his sentence was substantively unreasonable. He argues that most of his criminal history occurred when he was a teenager. And he argues that the underlying offense in this case is not particularly egregious. But given the *length* of his criminal history, his adult misconduct is substantial. It is particularly substantial when weighed against the fact that Mabery has essentially never held a job.

In any event, we review the substantive reasonableness of a sentence under an abuse-of-discretion standard. Ferguson v. United States, 623 F.3d 627, 631 (8th Cir. 2010). An abuse of discretion occurs where the sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors. United States v. Lozoya, 623 F.3d 624, 627 (8th Cir. 2010); Bryant, 606 F.3d at 921. We review with great deference the reasonableness of a sentence for abuse of discretion, and it will be the unusual case when we reverse a district court sentence as substantively unreasonable. United States v. Elodio-Benitez, 672 F.3d 584, 586 (8th Cir. 2012); United States v. Mejia-Perez, 635 F.3d 351, 353 (8th Cir. 2011).

Given the record and the facts set forth in the presentence investigation report, we cannot say that the district court abused its discretion. To begin with, substantive reasonableness is presumed if a sentence is within the appropriately calculated Guidelines range (as it is here). See Bryant, 606 F.3d at 921. And a sentencing court has wide latitude to weigh the § 3553(a) factors and assign some factors greater weight than others in determining an appropriate sentence. See Elodio-Benitez, 672 F.3d at 586; Lozoya, 623 F.3d at 627. Those factors require the court to consider, among other things, the need for the sentence imposed to "promote respect for the law," "afford adequate deterrence to criminal conduct[,]" and "protect the public from further crimes of the defendant[.]" See § 3553(a)(2).

The court did not err here in finding that Mabery's history and characteristics, to the minimal extent that they might have formed a basis for leniency, were outweighed by the other § 3553(a) factors. And, contrary to Mabery's suggestion, the court's reasoning was adequately explained at sentencing–when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Bryant, 606 F.3d at 918 (citing Rita v. United States, 551 U.S. 338 (2007)); see also Nissen, 666 F.3d at 491 (no requirement that court recite every § 3553(a) factor during sentencing).

In sum, we find no merit to Mabery's arguments that the district court erred in imposing sentence.

III

For the foregoing reasons, we affirm.

_____