# United States Court of Appeals
### For the Eighth Circuit

_____

## No. 20-2517
_____

United States of America

*Plaintiff - Appellee*

v.

Andrew Joseph Sarchett

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: June 14, 2021
Filed: July 12, 2021

_____

Before BENTON, ARNOLD, and STRAS, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Andrew Sarchett was charged with committing a half-dozen drug offenses, he pleaded guilty to one count of distributing methamphetamine by a person previously convicted of a felony drug offense. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 851. He maintains on appeal that the district court miscalculated his Sentencing Guidelines range when it found him responsible for drugs to which he had no

connection. He also maintains that the court erred in ordering him to pay restitution for environmental damages that drug manufacturing had caused. We agree with Sarchett, and so we reverse and remand for resentencing.

Sarchett and the government entered into a plea agreement in which he stipulated that he had sold methamphetamine to a confidential informant for thirty dollars. In that agreement he stipulated to additional facts relevant to other charges levied against him but to which he did not plead guilty. At least two of those charges related to an incident that occurred at the home of Sarchett's girlfriend. According to the plea agreement, police went to the home to arrest Sarchett for a probation violation. Sarchett's girlfriend permitted officers to search for him, but he was not there. The search did, however, turn up equipment used to manufacture methamphetamine along with empty packaging for pseudoephedrine, a precursor of methamphetamine. The plea agreement then notes that Sarchett had bought 9.6 grams of pseudoephedrine three to six months earlier.

At least two of those other charges related to an incident when police stopped a car that Sarchett's girlfriend was driving for an equipment violation. According to the plea agreement, when police performed the stop, a man fled from the vehicle on foot. Sarchett's girlfriend identified the man as someone other than Sarchett but then changed her story and said that Sarchett was the man who had fled. Officers found more manufacturing equipment in the car along with 7.2 grams of pseudoephedrine.

The agreement also stipulated that Sarchett was a career offender whose offense level at sentencing would be level thirty-four. *See* USSG § 4B1.1(b). The agreement recognized, though, that despite the parties' stipulation, the district court could conclude that Sarchett was not a career offender. In that case, his base offense level would be at least twelve, but it could be greater because "he could be assessed additional quantities of pseudoephedrine used to manufacture methamphetamine if that is deemed to be relevant conduct."

As the case proceeded to sentencing, the Probation Office prepared a presentence investigation report that incorporated the factual stipulations contained in the plea agreement. The PSR included a nearly verbatim reproduction of the stipulated facts regarding the search of the home of Sarchett's girlfriend. But at the end of the paragraph containing this recitation, the PSR attributed 9.6 grams of pseudoephedrine to Sarchett as part of the effort to determine the quantity of drugs that Sarchett was responsible for handling. It also explained that the owner of the home where his girlfriend was living had to spend $7500 to rid the property of environmental hazards that drug manufacturing had caused. The PSR likewise recounted the incident where police searched the car of Sarchett's girlfriend, and based on this incident it recommended that Sarchett be held responsible for an additional 7.2 grams of pseudoephedrine. The inclusion of these additional quantities of pseudoephedrine in Sarchett's Guidelines calculation doubled his base offense level from twelve to twenty-four. That was because the methamphetamine that Sarchett sold to the confidential informant for thirty dollars represented only 0.38 kilograms in converted drug weight; the pseudoephedrine stemming from the incidents involving his girlfriend's home and car represented 168 kilograms.

Sarchett objected to the PSR's attributing these quantities and any restitution obligation to him. More specifically, he "denie[d] residing at [the girlfriend's] residence" and being responsible for the materials recovered there and "specifically denie[d] being present in her vehicle and ever possessing the noted materials . . . that were then recovered from [her] vehicle." The Probation Office responded by pointing to the plea agreement and reaffirmed its recommendations. But it also noted that, in light of the parties' stipulation that Sarchett was a career offender, his objections did "not have an impact on the determination of the defendant's total offense level and the resulting advisory guideline range." In its sentencing memorandum filed before the sentencing hearing, the government expressly recognized that there were "potential issues to be resolved as [to] the drug quantity and restitution," and it too stated that the plea agreement could "be used to resolve any issues." But it noted, in addition,

that given the career-offender stipulation, the court didn't need to resolve the drug-quantity matters. As for restitution, the government relied on the stipulation of facts in the plea agreement.

At the sentencing hearing, the parties reiterated their views on drug quantity and restitution. The district court overruled Sarchett's objections "[b]ased on his stipulated facts of admission in the plea agreement." The court explained that Sarchett was "clearly tied to" his girlfriend's home because he had admitted in the plea agreement that he resided there and because of his "history of manufacturing methamphetamine." The court did not expressly mention the incident involving the girlfriend's car.

When the subject of the hearing shifted to Sarchett's career-offender status, the court rejected the parties' stipulation and held that Sarchett was not a career offender, which meant that the drug-quantity determination wound up driving the Guidelines range. After determining that the correct range was 77–96 months' imprisonment, the court varied upward and sentenced Sarchett to 176 months.

On appeal, Sarchett maintains that the district court committed procedural error when it found a connection between him and the materials found in his girlfriend's home and car. We review the court's factual findings for clear error and its application of the Guidelines de novo. *United States v. Comly*, 998 F.3d 340, 343 (8th Cir. 2021). Drug quantity determinations are factual findings that we review for clear error, mindful that they must be supported by a preponderance of the evidence. *See United States v. Janis*, 995 F.3d 647, 651 (8th Cir. 2021).

We begin with the incident involving the car. Sarchett stipulated that his girlfriend identified Sarchett as the man who ran from her car, though she did so only after identifying a different man. When these facts were reproduced in his PSR, Sarchett objected and denied any participation in the matter. At that point it was

incumbent on the government to prove Sarchett's involvement by a preponderance of the evidence. *See United States v. Bowers*, 743 F.3d 1182, 1184 (8th Cir. 2014). The government simply pointed to the plea agreement and offered no other evidence, perhaps because it believed that Sarchett's stipulation to being a career offender would moot the issue. Regardless of the reason it provided no additional evidence, we think that the plea agreement clearly comes up short because it shows only that Sarchett stipulated to what his girlfriend told police at the scene, not that he was actually the one who fled the vehicle or that he had any responsibility whatsoever for its contents.

We reach the same conclusion with respect to the incident involving his girlfriend's home. The plea agreement never expressly connects Sarchett to the home other than to say that police went there to arrest him. That's simply insufficient. The agreement does say, ambiguously, that police officers went to "his girlfriend's residence" and that, upon arriving at the residence, they met with the girlfriend, "who also lived at the residence." It's unclear why the agreement says that she "also" lived at the home when, a sentence before, it described the home as hers. Perhaps the word "also" was meant to suggest that Sarchett lived there too. Or perhaps it meant that a third person lived there. Or maybe it was employed merely to introduce an additional fact about Sarchett's girlfriend. It could be that the word was inserted inadvertently. The district court apparently interpreted the agreement as saying that Sarchett lived in the girlfriend's residence, but we think the presence of the word "also" when describing the police's encounter with the girlfriend at the girlfriend's home is too roundabout a way of saying that. Typically, when courts construe an ambiguous plea agreement such as this one, they construe the ambiguities against the government. *See United States v. Lara*, 690 F.3d 1079, 1081 (8th Cir. 2012). We do so here.

The district court also intimated that Sarchett's manufacturing history connected him to the home. We disagree again. The record does not disclose, as far as we can tell, any evidence of prior instances where Sarchett was caught or said to

be manufacturing methamphetamine from this home. That he had previously manufactured drugs elsewhere or bought pseudoephedrine three to six months before officers searched the home doesn't tie Sarchett in any way to the home in question, even though officers found an empty package of some unknown amount of pseudoephedrine. There's nothing to suggest that Sarchett was connected to the packaging found at his girlfriend's home. In short, something more was needed to support the court's finding.

There are, moreover, clear indications in the plea agreement that Sarchett wasn't accepting responsibility for the items found at the home. For example, the plea agreement originally said that there was damage caused by "defendant's methamphetamine lab" at the home. But the word "defendant's" was struck and replaced by the word "the" and initialed by Sarchett's attorney, so the agreement then said "the methamphetamine lab" rather than "defendant's methamphetamine lab." Sarchett was quite obviously distancing himself from responsibility for the materials found there. Likewise, the plea agreement originally said that Sarchett agreed to pay cleanup costs at the home, but handwritten above that line was "if it is deemed to be relevant conduct," again initialed by Sarchett's attorney. Once more, Sarchett was steering clear of any admission that he was responsible for the items found at his girlfriend's home. And his objections to the PSR confirm his argument that he never stipulated to being responsible for these things. At this point the government should have put on its proof, but it did not. The district court therefore clearly erred in relying on the stipulations contained in the plea agreement to establish Sarchett's responsibility for the items found at the home, to find him responsible for additional quantities of drugs, and to order him to pay restitution to the homeowner.

To salvage the judgment, the government contends that another, unobjected-to portion of the PSR, which wasn't contained in the plea agreement, can be used to uphold the district court's findings. The government didn't advance this argument to the district court, even though it should have been aware of it given that the Probation

Office had raised it in response to Sarchett's objections to the PSR. The district court, moreover, didn't rely on those other possibly relevant portions of the PSR when resolving Sarchett's objections. The paragraphs in question detail how one person told police that Sarchett had manufactured and used methamphetamine, and they lay out testimony from Sarchett's girlfriend, apparently from some other court proceeding, where she said that Sarchett was living in the home at the relevant time and was manufacturing methamphetamine there.

The government's argument raises several concerns. First of all, these paragraphs do not connect Sarchett to his girlfriend's car, so remand for resentencing will be necessary even if we agreed with the government that these paragraphs connect Sarchett to the home. Second, though it's true that district courts may rely on unobjected-to paragraphs in a PSR, they are not obligated to do so. *See* Fed. R. Crim. P. 32(i)(3)(A). Third, we think in light of the circumstances that Sarchett's failure to object to these paragraphs does not necessarily mean that he admitted his connection to his girlfriend's home. We think it plausible that Sarchett was merely admitting that his girlfriend testified to those facts, not that the facts were true. Indeed his other objections and his careful revisions to the plea agreement make clear that he assiduously disputed his connection to the materials found in his girlfriend's home and car. So we think it a mistake to interpret his silence in the face of these paragraphs as a back-door admission that he was actually responsible for these items. *Cf. United States v. Moore*, 582 F.3d 641, 645 (6th Cir. 2009). We therefore reject the government's invitation to uphold the judgment on the basis of these other paragraphs in the PSR.

Perhaps on remand the substance of what these people spoke of, even without being admitted by Sarchett, can support, even if they do not mandate, a finding that he was responsible for the items found in his girlfriend's home. *See id.* at 644–45. But we leave it up to the district court to determine that in the first instance, which would have to include a determination that these statements have "sufficient indicia of

reliability to support [their] probable accuracy." *See* USSG 6A1.3(a); *see also United States v. Pratt*, 553 F.3d 1165, 1170 (8th Cir. 2009). Or, of course, the government could simply call witnesses to testify at the sentencing hearing rather than rely on their out-of-court statements.

We therefore reverse and remand to the district court for resentencing, as Sarchett requests, to reconsider the extent of his relevant conduct and the propriety of a restitution award.

_____