# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-3054

_____

United States of America

*Plaintiff - Appellee*

v.

Christin Campbell-Martin

*Defendant - Appellant*

_____

No. 20-3181

_____

United States of America

*Plaintiff - Appellee*

v.

Adam Scott Leiva

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 24, 2021
Filed: November 8, 2021

_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Christin Campbell-Martin and Adam Leiva conditionally pleaded guilty to possession with intent to distribute a controlled substance near a protected location and aiding and abetting the possession with intent to distribute after the district court[1] denied their motions to suppress methamphetamine discovered during a warrantless search of a vehicle. *See* 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 860(a). Campbell-Martin and Leiva appeal, challenging the denial of their suppression motion and the district court's sentencing guidelines calculations. We affirm.

**I.**

On May 25, 2018, at 10:27 p.m., Officer Nicole Hotz was patrolling a school parking lot and asking people to leave because suspicious activity had been occurring there overnight. Officer Hotz noticed a vehicle pull into the lot. She pulled up near the vehicle and parked two spots away from it so that she could ask the occupants to leave. A woman later identified as Christin Campbell-Martin was sitting in the driver's seat and seemed to be hiding her face with her hands. Officer Hotz shined a spotlight on the driver's side window to get the woman's attention and then walked up to the window. The woman rolled down the window and Officer Hotz noticed that "she was very nervous and fidgety"; "[h]er speech was quick"; and "her pupils were constricted," which Officer Hotz thought was unusual in the dark. Officer Hotz also noticed that the woman "kept pulling her knees to her chest and breathing really heavy." Officer Hotz thought that the woman might be under the influence of drugs. Officer Hotz also thought it was strange that the two male passengers were very quiet and did not look toward her.

_____

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

When Officer Hotz requested everyone's identification, the woman in the driver's seat and the man in the front passenger seat stated that their names were "Shannon Mckelvy" and "Favian Estrada" but denied having identification. Officer Hotz then asked, "What's going on? Run me through. Something's going on right now." The woman said that the two passengers picked her up because her boyfriend was "beating the crap out of" her, causing Officer Hotz to ask her if she was okay. Neither knew the last four digits of their social-security number, which Officer Hotz thought was strange. Officer Hotz ran "Estrada's" name and discovered that it was false and that his real name was Adam Leiva, so she arrested him for providing false identification information. *See* Iowa Code § 719.1A (2018).

Sergeant Richard Holland arrived to assist Officer Hotz and asked "Mckelvy" if a purse in the back seat belonged to her. She said it did not and refused to give Sergeant Holland permission to search it. Because the man in the back seat said he was the one who had been lent the car, Officer Hotz asked him to look for identification in the purse. When he found "Mckelvy's" identification stating that her real name was Christin Campbell-Martin, the officers arrested her for providing false identification information.

Sergeant Holland decided to impound the car and asked the man in the back seat to exit the vehicle. After the man got out of the car, Officer Holland started to search the vehicle and found a backpack on the floor of the front-seat passenger area. Inside of the backpack he found a bag of what he thought was methamphetamine. He also found $2,850.10 in cash, a small scoop, paperwork addressed to Leiva and Campbell-Martin, and smaller baggies. In the center console he found Leiva's identification. After he finished searching, the car was impounded.

A federal grand jury indicted Campbell-Martin and Leiva on one count of possession with intent to distribute a controlled substance near a protected location and aiding and abetting the possession with intent to distribute. *See* 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 860(a). Campbell-Martin and Leiva moved to suppress the methamphetamine found in the car, arguing that the initial encounter

was an unconstitutional seizure because Officer Hotz did not have probable cause or reasonable suspicion and that the warrantless search of the vehicle and its contents was an unconstitutional search. The district court denied the motion, concluding that the defendants were not seized when Officer Hotz first approached them, Officer Hotz had probable cause to command them to exit the car and arrest them, and the search of the car was a valid inventory search and search incident to arrest.

Campbell-Martin and Leiva conditionally pleaded guilty, preserving their right to appeal the denial of their suppression motion. *See* Fed. R. Crim. P. 11(a)(2). At sentencing, the district court denied Campbell-Martin's motion for a two-level minor-role reduction in her offense level, *see* U.S.S.G. § 3B1.2(b), applied a two-level enhancement to Leiva's offense level because the drug offense directly involved a protected location, *see* U.S.S.G. § 2D1.2(a)(1), and assessed three criminal-history points for Leiva's prior methamphetamine-possession offense. The district court sentenced Campbell-Martin to 200 months' imprisonment and 10 years' supervised release and Leiva to 235 months' imprisonment and 10 years' supervised release. Campbell-Martin and Leiva appeal, challenging the district court's denial of their suppression motion and its sentencing guidelines calculations.

## II.

First, the defendants challenge the district court's denial of the suppression motion. "In reviewing a denial of a motion to suppress, we review the district court's findings of fact for clear error, giving due weight to the inferences police drew from those facts. We review de novo the district court's legal conclusion that reasonable suspicion or probable cause existed." *United States v. Pacheco*, 996 F.3d 508, 511 (8th Cir. 2021).

The defendants challenge the district court's suppression denial on two grounds. First, Campbell-Martin argues that the initial stop was an unconstitutional seizure because it was conducted without reasonable suspicion and thus the methamphetamine must be suppressed as "fruit of the poisonous tree." *See United*

-4-

*States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018). Second, Campbell-Martin and Leiva argue that the warrantless search of the car was unconstitutional because neither the inventory exception nor the search-incident-to-arrest exception to the warrant requirement applies.

A.

We first consider whether Officer Hotz's approach to the car constituted an unconstitutional seizure. A Fourth Amendment seizure occurs when an officer "by means of physical force or show of authority[] has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)). To determine whether an encounter is a seizure, we must consider all the relevant circumstances. *United States v. Mabery*, 686 F.3d 591, 596 (8th Cir. 2012). Circumstances that suggest a seizure occurred are "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*

Officers must obtain a warrant to conduct a seizure unless an exception to the warrant requirement applies. *Terry*, 392 U.S. at 20. Under one exception, "officers may conduct brief investigatory stops of individuals if they have a reasonable articulable suspicion of criminal activity." *United States v. Griffith*, 533 F.3d 979, 983-84 (8th Cir. 2008). "A law enforcement officer has reasonable suspicion [to conduct an investigatory stop] when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019) (alteration in original) (internal quotation marks

omitted). To determine whether an officer had reasonable suspicion, we consider the totality of the circumstances. *Pacheco*, 996 F.3d at 512.

Considering all the relevant circumstances, Officer Hotz's initial encounter with Campbell-Martin and Leiva was not a Fourth Amendment seizure because it was a consensual encounter. Even if it became nonconsensual, Officer Hotz had reasonable suspicion to question them and ask for identification.

Officer Hotz's conduct would not have communicated to a reasonable person that he could not leave. Officer Hotz was alone, she did not display a weapon, she did not touch the defendants, and she did not use forceful language. She parked beside the car rather than in front of or behind it so the driver would have been able to drive away. She also did not ask the occupants to get out of the car until she knew they had provided false names.

We have previously held that an encounter was consensual when the officer parked at least fifteen feet in front of the parked car, did not turn on emergency lights, walked with his hand on his weapon, did not order the defendant to get out of the car, and knocked on the window three separate times. *United States v. Barry*, 394 F.3d 1070, 1072, 1075 (8th Cir. 2006). Similarly, Officer Hotz parked two spots away from the car, did not turn on her emergency lights, and did not ask anyone to get out of the car. Even though Officer Hotz shined her spotlight on the car, this is "no more intrusive . . . than knocking on the vehicle's window." *Mabery*, 686 F.3d at 597.

Nor does requesting identification or asking questions effect a seizure "as long as the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 435; *see also United States v. Stewart*, 631 F.3d 453, 456 (8th Cir. 2011) ("Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and request to examine his or her identification."); *United States v. Lozano*, 916 F.3d 726, 728, 730-31 (8th Cir. 2019). Here, Officer Hotz did not convey such a message when requesting the

defendants' identification and asking them questions. When she asked for identification, her tone was conversational, she framed her request as a question, and she said "please." And when she said, "What's going on? Run me through. Something's going on right now," she did not use an authoritative tone of voice and she asked if Campbell-Martin was okay. *Cf. United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996) (concluding that the defendant was not seized when "the tone of the entire exchange was cooperative").

Even if at a certain point the encounter became nonconsensual, Officer Hotz had reasonable suspicion to "expand[] the scope of the encounter to a[n investigatory] stop." *See Griffith*, 533 F.3d at 983-84. Even before Officer Hotz asked to see the defendants' identification, she observed them drive into a school parking lot around 10:30 p.m., Campbell-Martin appeared to hide her face with her hands, and she did not look at Officer Hotz after Officer Hotz shined her spotlight on the driver's window. And after approaching the car, Officer Hotz had reasonable suspicion to believe that Campbell-Martin was under the influence of drugs because she was "nervous and fidgety," "[h]er speech was quick," "her pupils were constricted," and "[s]he kept pulling her knees to her chest and breathing really heavy." Officer Hotz also observed that the two passengers were very quiet and did not look toward her. Based on Officer Hotz's training and experience in dealing with individuals under the influence, she reasonably believed that Campbell-Martin might be under the influence. Officer Hotz had reasonable suspicion based on articulable facts to extend the encounter to investigate whether Campbell-Martin was driving under the influence. *See United States v. Marin*, 988 F.3d 1034, 1041-42 (8th Cir. 2021) (finding reasonable suspicion to prolong a traffic stop due to suspected drug use based on the defendant's excited speech, mannerisms, and elevated heart rate).

Leiva argues that Officer Hotz did not have reasonable suspicion of drug use because she did not perform a sobriety test or drug recognition test. Leiva's argument is unpersuasive because the relevant question is whether Officer Hotz had reasonable suspicion of criminal activity, not whether her reasonable suspicion was

confirmed. *See United States v. Sanchez*, 572 F.3d 475, 478-79 (8th Cir. 2009) (concluding that an officer had reasonable suspicion that a car did not display valid proof of vehicle registration even though the officer turned out to be wrong).

After asking for Campbell-Martin's and Leiva's identification information, Officer Hotz also had reasonable suspicion to believe that they gave false names because neither had identification, they did not know their social-security numbers, and Leiva stumbled through his date of birth. *See United States v. Chaney*, 584 F.3d 20, 26 (1st. Cir. 2009) (finding that the officer could extend the traffic stop based on reasonable suspicion that the defendant provided a false name and might be involved in criminal activity because of his "implausible answers and nervous demeanor").

Considering the totality of the circumstances, we conclude that the encounter was initially consensual, and even if it ultimately became nonconsensual, it was justified by reasonable suspicion of criminal activity. Therefore, the evidence obtained from the encounter should not be suppressed as "fruit of the poisonous tree." *See Tuton*, 893 F.3d at 568.

B.

Next, we consider whether Sergeant Holland's search of the backpack without a warrant constituted an illegal search. *See Birchfield v. North Dakota*, 579 U.S. ---, 136 S. Ct. 2160, 2173 (2016) (explaining that generally police need a warrant to conduct a search but that there are many exceptions to this requirement); *Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest."). The district court concluded that the search was both a valid inventory search and a valid search incident to arrest. Because we agree that the search was a valid search incident to arrest, we do not reach the question whether it was also a valid inventory search.

"Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the

search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. A permissible search incident to arrest may extend to the passenger compartment, including containers in the passenger compartment. *New York v. Belton*, 453 U.S. 454, 460-61 (1981) (abrogated on other grounds by *Gant*, 556 U.S. at 343).

Here, "it [wa]s reasonable to believe that the vehicle contain[ed] evidence of the offense [of providing false identification information]."[2] *See Gant*, 556 U.S. at 351. The defendants argue that the search-incident-to-arrest exception does not apply in this case because in *Gant* the Court refused to apply the exception to the offense of driving with a suspended license. *See id.* at 344. The *Gant* court held that searching a car to find evidence of driving with a suspended license did not fall within the exception "[b]ecause police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein." *Id.*

But this case involves a different offense of arrest—the offense of providing false identification information—and it was reasonable to believe that the vehicle and the backpack contained evidence of the offense of providing false identification information. Although the officers already knew that Campbell-Martin and Leiva provided false identification, they did not have Leiva's actual identification, which would help prove that Leiva provided false identification. It was reasonable to think that his identification would be in the car because he had not given the officers any identification even after he was arrested. *See id.* The backpack that was sitting at Leiva's feet in the car was a logical place to look for identification such as a driver's license, mail, receipts, credit cards, or checks. Indeed, the officers found paperwork in the backpack with Leiva's real name on it and Leiva's identification in the center console.

---

[2]Campbell-Martin and Leiva do not challenge the basis for or the legality of their arrest.

Leiva argues that the Eleventh Circuit's decision in *Davis v. United States*, 598 F.3d 1259 (11th Cir. 2010), eliminates the search-incident-to-arrest exception for offenses involving false identification. In *Davis*, the Eleventh Circuit stated in *dicta* that a search incident to arrest for the offense of providing false identification information was unconstitutional under *Gant* because the police could not expect to find evidence in the passenger compartment as the officer "had already verified [the defendant's] identity when he arrested him for giving a false name." *Id.* at 1263.

Respectfully, we disagree with the Eleventh Circuit's analysis. Nothing in *Gant* prohibits the police from searching for additional evidence of an offense. *See Gant*, 556 U.S. at 343-44, 351. Here, "it [was] reasonable to believe the vehicle contain[ed] evidence of the offense of arrest" because police could have found evidence in the car and in the backpack relevant to the occupants providing false identification information, even though the officer already knew their real names. *See id.* at 351; *accord United States v. Edwards*, 769 F.3d 509, 515 (7th Cir. 2014) (holding that the search-incident-to-arrest exception applied to the offense of driving without the owner's consent when officers were searching for evidence of the car's ownership even though the defendant had already admitted that someone else owned the car); *cf. United States v. Donahue*, 764 F.3d 293, 303 (3d Cir. 2014) (analyzing the automobile exception and stating that "though it is clear from the record that the government had compelling evidence that Donahue had committed the crime of failing to surrender before its agents searched his vehicle . . . and such evidence might have lessened the *need* for a search, the search was lawful").

Considering the totality of the circumstances, we conclude that the officers were permitted to search the car and the backpack as a search incident to arrest. Therefore, the district court did not err in denying the motion to suppress.

## III.

Second, the defendants argue that the district court erred in calculating their advisory sentencing guidelines range. "We review de novo the district court's

interpretation and application of the advisory Guidelines and review for clear error its findings of fact." *United States v. Carpenter*, 487 F.3d 623, 625 (8th Cir. 2007).

## A.

Campbell-Martin claims that the district court erred in denying her request for a two-level reduction for a minor role in the offense under U.S.S.G. § 3B1.2(b). We review "the district court's determination of whether a defendant qualifies for a mitigating role reduction for clear error." *Id.* "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." *United States v. Salvador*, 426 F.3d 989, 993 (8th Cir. 2005). "However, 'merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was "deeply involved" in the offense.'" *United States v. Cubillos*, 474 F.3d 1114, 1120 (8th Cir. 2007) (quoting *United States v. Bush*, 352 F.3d 1177, 1182 (8th Cir. 2003)). "The defendant bears the burden of establishing entitlement to the reduction." *Id.*

The evidence before the district court showed that Campbell-Martin's role was to distribute the methamphetamine. "This is more than sufficient to show deep involvement in the offense." *Cubillos*, 474 F.3d at 1120. Campbell-Martin argues that it was Leiva who determined the amount of methamphetamine to buy, she did not have decision-making authority, she did not pay for the methamphetamine, and the evidence does not show that she was involved in the decision to buy and resell methamphetamine. Even assuming Campbell-Martin was less culpable than Leiva, however, the presentence investigation report indicates that she was nonetheless deeply involved because she weighed the methamphetamine, sold it, and collected drug debts.[3] *See United States v. Barth*, 424 F.3d 752, 763-64 (8th Cir. 2005)

---

[3]The district court "may rely on unobjected-to paragraphs in a PSR." *United States v. Sarchett*, 3 F.4th 1115, 1120 (8th Cir. 2021) (citing Fed. R. Crim. P. 32(i)(3)(A)).

(concluding that the defendant did not have a minor role when her home was a drug distribution center and she provided resources; weighed, cut, and packaged drugs; and collected money on behalf of the supplier); *United States v. Adamson*, 608 F.3d 1049, 1054 (8th Cir. 2010) (holding that well-paid couriers for selling drugs were not entitled to a minor-role reduction because "[t]ransportation is an important component of an illegal drug distribution organization"); *Salvador*, 426 F.3d at 994 (concluding that the defendant did not have a minor role even though he did not have decision-making authority because he played an "important role" as translator by facilitating transactions, being present at the transactions, and handing over the drugs). Thus, the district court did not clearly err in denying Campbell-Martin a minor-role reduction.

## B.

Leiva claims that the district court incorrectly calculated his advisory sentencing guidelines range by applying a two-level enhancement for drug offenses directly involving protected locations under U.S.S.G. § 2D1.2(a)(1). He argues that the district court was required to find that he intended the distribution to take place in or within 1,000 feet of the protected location because intent is an element of his offense—possession with intent to distribute—and that it could not because the plea agreement stipulated that he did not intend to distribute methamphetamine in or near the school. But the plain language of § 2D1.2(a)(1) does not require that the defendant intend for distribution to take place in or within 1,000 feet of a protected location. *United States v. Mundy*, 621 F.3d 283, 295-96 (3d Cir. 2010) (concluding that § 2D1.2(a)(1) does not require evidence that the defendant "intended to distribute any drugs within 1,000 feet of a school"); *cf. United States v. Walker*, 993 F.2d 196, 198-99 (9th Cir. 1993) (holding that U.S.S.G. § 2D1.2(a)(1) does not require the government to prove that the defendant intended to distribute to students). Because Leiva stipulated in his plea agreement that he knowingly and intentionally possessed the methamphetamine and was within 1,000 feet of a school, the district court properly applied the two-level enhancement.

-12-

## C.

Leiva also claims that the district court erred in assessing three criminal-history points for his January 2018 drug-possession conviction under U.S.S.G. § 4A1.2(a). He claims that his January 2018 possession offense is relevant conduct for the instant offense of possession with intent to distribute that occurred in May 2018. "When calculating criminal history points, a sentencing court is to consider 'any sentence previously imposed . . . for conduct not part of the instant offense,' defined as conduct other than 'relevant conduct' under U.S.S.G. § 1B1.3." *United States v. Pinkin*, 675 F.3d 1088, 1090-91 (8th Cir. 2012) (quoting U.S.S.G. § 4A1.2(a)(1) and U.S.S.G § 4A1.2, cmt. n.1). "Whether acts are relevant conduct under the sentencing guidelines is a factual determination subject to review for clear error." *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006).

Relevant conduct is "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, cmt. n.5(B)(i). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* at cmt. n.5(B)(ii). We can consider factors such as "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.*

The district court did not clearly err in determining that Leiva's January 2018 offense is not relevant conduct to the instant offense. First, there is no common scheme because the January 2018 offense did not involve the intent to distribute drugs. Second, the two offenses lack a common purpose because the January 2018 offense did not involve distributing methamphetamine, but rather the possession of

prescription pills. Third, there were no common victims because neither offense has specific victims. Fourth, the offenses were also separated in time by four months. Fifth, geographically the offenses were separated by more than sixty miles—the January 2018 offense occurred in Marshall County, Iowa, and the instant offense occurred in Marion, Iowa. Thus, the district court did not clearly err in finding that the January 2018 offense was not relevant conduct and assigning three criminal-history points for the offense.

## IV.

For the foregoing reasons, we affirm.

_____